**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anthony CHUKWURA, Defendant–
Appellant.**

**No. 92–8737.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 1, 1993.

---

Suzanne Hashimi, Federal Defender Program, Inc., Atlanta, GA, for defendant-appellant.

James R. Harper, III, Asst. U.S. Atty., Atlanta, GA, for plaintiff-appellee.

Before FAY and HATCHETT, Circuit Judges, and JOHNSON, Senior Circuit Judge.

HATCHETT, Circuit Judge:

On an issue of first impression in this circuit, we hold that district courts have authority to order deportation of defendants "subject to deportation," as a condition of supervised release, pursuant to 18 U.S.C. § 3583(d) (1992).

## FACTS

From 1987 until his arrest on August 22, 1990, Anthony Chukwura, a Nigerian citizen, engaged in a check kiting scheme through obtaining false identification documents and opening accounts at banks. After opening the accounts with cash deposits, Chukwura deposited bogus checks, usually drawn on out-of-state banks. Before the local bank forwarded the bogus deposited checks to the out-of-state bank, Chukwura would withdraw as much of the balance as he could from the accounts. In this manner, Chukwura defrauded area financial institutions and created a balance of uncollected funds totaling $255,712.

## PROCEDURAL HISTORY

On September 14, 1990, a federal grand jury returned a three-count indictment against Chukwura. Subsequently, on November 4, 1990, a six-count indictment superseded the original indictment. On March 6, 1991, Chukwura pleaded guilty to Counts V and VI of the superseding indictment. Count V of the indictment charged Chukwura with bank fraud, in violation of 18 U.S.C. § 1344; Count VI charged Chukwura with the fraudulent use of a social security number, in violation of 42 U.S.C. § 408(g)(2).

After Chukwura pleaded guilty, the probation department prepared a presentence report (PSI). In the report, the U.S. Probation Officer concluded that Chukwura used twenty-one separate aliases during the check kiting scheme. Chukwura and the United States filed objections to the report, and the probation officer prepared an addendum. Chukwura also filed objections to the addendum.

Specifically, Chukwura denied using any aliases other than the two alleged in Counts V and VI of the indictment. Additionally, Chukwura objected to the presentence report's recommendation that the court deny him a downward adjustment for acceptance of responsibility because of his objections. The district court issued a written ruling on Chukwura's objections to the PSI, attributing losses to the fraudulent accounts involving eleven of these aliases and denying Chukwura the downward adjustment.

In its written order, the district court also found, based on the reliable evidence, that under U.S.S.G. § 2F1.1(b)(1) the amount of loss due to the scheme totalled $255,712. Chukwura objected to this finding, arguing that the loss figure contained amounts which he never actually obtained. Thus, he maintained, the court should make a downward adjustment pursuant to U.S.S.G. § 2X1.1(b)(1). The district court overruled this objection.

Upon calculating a guideline range of 21 to 27 months, based on an offense level of 16 and a criminal history category of I, the court sentenced Chukwura to twenty-one months imprisonment, followed by three years of supervised release. As a condition of supervised release, the district court ordered Chukwura deported, stating that he must "depart the United States and reside beyond its borders for three years," "with all deliberate speed." Chukwura objected to the legality of deportation, arguing that it deprived him of the right to contest deportation and that the district court exceeded its

authority in ordering deportation. After he completed the custodial portion of his sentence, Immigration and Naturalization Services (INS) officials released Chukwura on bond. Upon release, Chukwura promptly moved to stay the term of supervised release in the district court and subsequently in this court. Both courts denied the stay requests.

## ISSUES

This appeal involves three issues: (1) whether the district court had authority to order Chukwura's deportation; (2) whether the district court erred in denying Chukwura a downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1; and (3) whether Chukwura's relevant conduct should include the amount of funds he fraudulently deposited but did not withdraw from the bank accounts.

## DISCUSSION

### I. Whether the district court had authority to order Chukwura's deportation.

■ Chukwura contends that the district court lacked authority to order his deportation as a condition of supervised release. He argues that the INS maintains exclusive jurisdiction to deport aliens. The government contends that pursuant to 18 U.S.C. § 3583(d), the district court could properly order Chukwura to serve the period of the supervised release outside the country. This is an issue of first impression in this circuit and requires that we interpret and apply section 3583(d).

■ We begin our analysis through an examination of the language of the statute. Unless the language of the statute is ambiguous, or would lead to absurd results, its plain meaning controls. *United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1498 (11th Cir.1991). Because the language of section 3583(d) is unambiguous on its face, we need not go beyond its plain meaning. *NEC Corp.*, 931 F.2d at 1498.

Section 3583(d) provides, in part: "If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and re-main outside the United States, and may order that he be delivered to a duly authorized immigration official for deportation." Chukwura contends that this language, at most, allows the court to order a defendant surrendered to the INS after completing a custodial sentence. His argument ignores the plain language of section 3583(d).

Section 3583(d) plainly states that if a defendant is subject to deportation, a court may order a defendant deported "as a condition of supervised release." The statute then provides that if the court decides to order the defendant's deportation, it then "may order" the defendant delivered to a "duly authorized immigration official" for deportation. Nothing in this language supports Chukwura's interpretation. The language is unequivocal and authorizes district courts to order deportation as a condition of supervised release, any time a defendant is subject to deportation.

The last clause of this provision states that after a defendant is ordered deported, the district court "may order that he be delivered to a duly authorized immigration official for deportation." § 3583(d). This language is equally plain and clarifies any possible confusion that may arise from the administration of the deportation process. The mandatory term "delivered," requires authorities to surrender defendants to "duly authorized immigration official[s]" if deportation is ordered as a term of supervisory release. In this manner, the INS maintains responsibility for the actual processing of a person ordered deported. The statutory language does not involve the court in deporting defendants, as this ministerial responsibility resides with the INS and its authorized immigration officials.

■ Contrary to Chukwura's assertions, this statute does not infringe upon the INS's authority to deport resident aliens. The INS maintains, at all times, the authority to deport individuals and to carry out the actual deportation. Pursuant to section 3583(d), however, courts may also order deportation. Because we must assume that Congress is aware of existing laws when it passes legislation, we construe the court's authority under section 3583(d) to coexist with the INS's

deportation authority. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32, 111 S.Ct. 317, 325, 112 L.Ed.2d 275 (1990). Thus, while both may order defendants deported, only the INS may actually deport them.

■ Finally, Chukwura argues that the district court's deportation order denied him a deportation hearing. The Sentencing Guidelines specifically require sentencing courts to address many of the factors that arise at regular INS deportation hearings. While we do not require district courts, contemplating whether to order a defendant deported, to conduct an INS type hearing, we are confident that in this case the sentencing hearing met those requirements. Thus, Chukwura's argument lacks merit, and we hold that the sentencing court had authority to order deportation.

II. Whether the district court erred in denying Chukwura a downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

■ Chukwura also contends that the district court erred in refusing to grant him a two-step reduction for acceptance of responsibility because he offered to cooperate with the government, entered a plea of guilty, expressed remorse, and saved the court and the government the expense of trial.

■ Pursuant to section 3E1.1(a) of the Sentencing Guidelines, criminal defendants may receive a two-level reduction if they "clearly demonstrate[ ] a recognition and affirmative acceptance of personal responsibility for" the criminal conduct. A defendant receives consideration under this provision "without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial." § 3E1.1(b). The reduction, however, is not automatic. In appropriate circumstances, the sentencing court may deny a defendant the reduction following a guilty plea, if the defendant does not demonstrate an acceptance of responsibility.

*United States v. Rodriguez*, 905 F.2d 372, 374 (11th Cir.1990). *See also* § 3E1.1 application note 3 (guilty plea standing alone does not entitle defendant to reduction).

■ Because the sentencing court is in a unique position to evaluate a defendant's acceptance of responsibility, we give its determination great deference on review. § 3E1.1 application note 5. *United States v. Castillo–Valencia*, 917 F.2d 494, 500 (11th Cir.1990), *cert. denied*, 499 U.S. 925, 111 S.Ct. 1321, 113 L.Ed.2d 253 (1991). We will not disturb such a finding unless it is clearly erroneous. *United States v. Rowland*, 906 F.2d 621, 622 (11th Cir.1990). In this case, sufficient evidence exists to support the district court's denial of a two-step reduction.

Initially, the probation officer recommended that Chukwura receive a two-step reduction for acceptance of responsibility. Chukwura objected to the presentence report and denied that he used twelve of the aliases attributed to him.[1] Evidence introduced at the sentencing hearings proved Chukwura's picture appeared in thirteen different driver's license photos, all bearing fictitious names corresponding with the names on fraudulently obtained bank accounts. Chukwura also denied involvement in any fraudulent activity other than that alleged in Counts V and VI of the indictment, covering the period from July 13, 1989, to June, 1990, even though the first bank fraud scheme Chukwura allegedly perpetrated took place in Atlanta in November of 1986. Because of these denials, the probation officer changed his recommendation and urged the court to deny Chukwura the reduction for acceptance of responsibility.

Chukwura also denied other illegal activity. During the investigation, a Federal Bureau of Investigation (FBI) special agent uncovered evidence showing Chukwura's check kiting scheme comprised only part of a larger network involving other Nigerian nationals. Based on information gathered from law enforcement officials and other Nigerians in-

---

1. Chukwura specifically denied using the names Everton Welch, Samuel Abraham, Andrew Akimu, Brian Jack Mathews, Nelson Bob Stanley, Edward Douglas Small, Richard Webster, Eson Elintah, and Otto Charles Debique. The proba-

tion officer who prepared the presentence report concluded that Chukwura had used each of these names, and each name was used in the execution of various bank fraud schemes.

volved in the fraud, the FBI agent concluded that Chukwura was a teacher who originally came to Atlanta to train other Nigerians how to perpetrate fraud. During the investigation, agents obtained evidence of this network while searching Chukwura's house. In the house, agents discovered two passports in the name of Larry Osa Ogbommon, containing fraudulent visa stamps, and between thirty and forty blank Virgin Island birth certificates.[2] Chukwura denied all of this.

With this evidence before it, the district court followed the probation officer's recommendation and denied Chukwura a two-step adjustment for acceptance of responsibility. Because significant evidence exists to support the district court's finding, we hold that the district court's finding is not clearly erroneous.

III. Whether Chukwura's relevant conduct should include the amount of funds he fraudulently deposited but did not withdraw from the bank accounts.

■ Chukwura contends that the district court erred when it did not reduce his offense level for criminal acts that he did not complete because, under the Sentencing Guidelines, uncompleted acts are merely "attempts." Chukwura argues that some or all of the money, totaling $82,393.50, remained in five of the fraudulent accounts. Because he did not withdraw those funds, he argues, he never completed the crime. Chukwura maintains that because these amounts only constituted "attempts," the court should have reduced the total of $255,712, by $82,393.50 when determining the scope of his relevant conduct. Applying this logic, Chukwura argues that he should have received a seven-level increase in his offense level, for losses greater than $120,000, rather than an eight-level increase for losses greater than $200,000.

In considering Chukwura's relevant conduct, the district court determined that the total amount of "uncollected funds" in the various bank accounts totaled $255,712. The court added the amounts of the fraudulent checks Chukwura deposited to arrive at this figure, the total amount of the intended loss-es. Chukwura does not contest that he procured $255,712. Because the court based its finding on reasonably reliable evidence, we reject Chukwura's argument.

In doing so, we find guidance in the guidelines commentary which provides that loss amounts "in a fraud case will be the same as in a theft case. For example, if the fraud consisted of selling *or attempting to sell* $40,000 in worthless securities, or representing that a forged check for $40,000 was genuine, the loss would be $40,000." § 2F1.1 application note 7 (emphasis added). Because Chukwura represented the checks as genuine, the sentencing court calculated the total loss as the aggregate amount of the fraudulent checks.

■ We review the sentencing court's findings of fact for clear error, giving significant deference to its application of the Sentencing Guidelines to those facts. *United States v. Griffin*, 945 F.2d 378, 380–81 (11th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1958, 118 L.Ed.2d 561 (1992). Because the facts developed at sentencing and the commentary to U.S.S.G. § 2F1.1 support the court's use of the deposited amounts to determine Chukwura's relevant conduct, we do not disturb that determination on appeal.

Accordingly, we affirm the district court.

AFFIRMED.

---

**2.** Later, Ogbommon was convicted for defrauding one of the same banks Chukwura defrauded.