**Edmundo M. CAMPOS, Petitioner–Appellant,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, et al., Respondents–Appellees.**

**No. 94–15361.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 14, 1995.

Decided Aug. 4, 1995.

Katherin Sears, Joel S. Sanders, Gibson, Dunn & Crutcher, San Francisco, CA, for petitioner-appellant.

Donald E. Keener, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, D.C., and Patricia A. Duggan, Asst. U.S. Atty., San Francisco, CA, for respondents-appellees.

Before: SCHROEDER, BEEZER, and THOMPSON, Circuit Judges.

SCHROEDER, Circuit Judge:

Federal prisoner and alien Edmundo Campos appeals the district court's summary judgment in favor of the Immigration and Naturalization Service ("INS") in Campos' mandamus action seeking an expedited deportation hearing pursuant to 8 U.S.C. § 1252(i). We must decide whether Congress in 1994 legislatively overruled the law of this circuit that permitted an incarcerated alien to seek such mandamus relief. *See, e.g., Silveyra v. Moschorack,* 989 F.2d 1012, 1014 n. 1 (9th Cir.1993). To assist our inquiry, we appointed counsel from our court's pro bono representation project. We conclude that in passing section 225 of the Immigration and Nationality Technical Corrections Act of 1994, Pub.L. No. 103–416 ("INTCA"), Congress has foreclosed mandamus actions under section 1252(i). We affirm the district court's judgment denying relief.

Petitioner-appellant Edmundo Campos was born in Lima, Peru in 1953 and entered the United States as a legal permanent resident alien in 1977. Campos was sentenced in 1989 to 15 years' federal imprisonment and a life term of supervised release for possession and conspiracy to possess cocaine with intent to distribute. Convictions for these crimes subject Campos to the possibility of deportation upon his release from prison. *See* 8 U.S.C. § 1252. His targeted good conduct release date is presently April 12, 1996.

Although Campos began serving his sentence in February of 1989, the INS took no action until June of 1992, when it filed a detainer with the Bureau of Prisons at the Federal Correctional Institution at Oakdale, Louisiana.[1] The detainer directs the Bureau of Prisons to ensure that Campos is transferred to Oakdale six months before the end of his sentence.

In 1993 Campos filed this action in district court seeking relief by means of a writ of habeas corpus pursuant to 28 U.S.C. § 2241, a claim under the Administrative Procedures Act, 5 U.S.C. §§ 701–706 ("APA") or, alternatively, a mandamus claim requesting the court to compel the INS to hold an immediate deportation hearing pursuant to 8 U.S.C. § 1252(i). 8 U.S.C. § 1252(i) provides:

> In the case of an alien who is convicted of an offense which makes the alien subject to deportation, the Attorney General shall begin any deportation proceeding as expeditiously as possible after the date of the conviction.

In its order to show cause, the district court denied Campos' claims for habeas and APA relief but acknowledged that Campos had presented a cognizable claim for mandamus. Ultimately, the district court granted summary judgment in favor of the INS, denying Campos mandamus relief on several grounds.

One of the reasons the district court granted summary judgment for the INS was the Service's representation that it would provide Campos with a deportation hearing before the completion of his sentence. As counsel for Campos accurately pointed out in oral argument of this appeal nearly a year and one-half later, however, because the INS has not yet instituted deportation proceedings, it is highly unlikely Campos will have a hearing and exhaust available appellate remedies before his targeted release date. He thus faces the likelihood that any challenge he makes to deportation will be at the risk of further detention beyond his criminal sentence.

Similar delays and seemingly unnecessary, prolonged incarceration prompted our decisions in a line of cases finding standing under the Mandamus Act[2] for incarcerated aliens to seek immediate deportation hearings. See *Silveyra v. Moschorack,* 989 F.2d 1012, 1014 n. 1 (9th Cir.1993); *cf. Soler v. Scott,* 942 F.2d 597, 605 (9th Cir.1991), *vacated as moot sub nom. Sivley v. Soler,* —— U.S. ——, 113 S.Ct. 454, 121 L.Ed.2d 364 (1992), *cited with approval in Silveyra,* 989 F.2d at 1014 n. 2 (finding rationale of *Soler* "sound"); *Garcia v. Taylor,* 40 F.3d 299, 301 (9th Cir.1994) (recognizing it is "settled" that "prisoner aliens who seek mandamus to force the INS to start deportation proceedings do have standing"). In *Silveyra,* we held that 8 U.S.C. § 1252(i) created a duty to incarcerated aliens because the plaintiff prisoner fell within the "zone of interests" protected by the underlying statute. See *Silveyra,* 989 F.2d at 1014 n. 1. The Fifth Circuit reached an opposite conclusion in *Giddings v. Chandler,* 979 F.2d 1104 (5th Cir.1992), holding that an incarcerated alien lacked standing to invoke the Mandamus Act to compel the institution of deportation proceedings. *Id.* at 1108–1110.

In 1994, Congress passed the Immigration and Nationality Technical Corrections Act of 1994, Pub.L. No. 103–416, 108 Stat. 4305 ("INTCA"). Section 225 of the Act provides that:

> [no] amendment made by this Act and nothing in § 242(i) of the Immigration and Nationality Act (8 U.S.C. § 1252(i)) shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.

INTCA, § 225.

In this appeal the INS contends that the INTCA overrules our prior authority and

---

**1.** Under the Criminal Alien Institutional Hearing Program ("IHP"), the Executive Office for Immigration Review attempts to facilitate expeditious hearings for inmates in federal custody by centralizing disbursed inmate populations at designated Bureau of Prisons facilities. One such federal facility is the Oakdale, Louisiana Federal Correctional Institution.

**2.** The Mandamus Act, 28 U.S.C. § 1361, provides:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

denies Campos standing to seek mandamus relief. The mandamus suits that we permitted in *Soler, Silveyra,* and *Garcia* were actions by incarcerated aliens brought to obtain the procedural benefit of an accelerated deportation hearing. Now, however, section 225 of the INTCA forecloses such relief as it expressly bars actions for "substantive or procedural" relief under section 1252(i).

■ Campos nevertheless contends that section 225 of the INTCA was only intended to eliminate judicial relief founded on a private right of action; therefore, he argues, the INTCA does not bar mandamus standing. This position is not tenable because prior to the enactment of INTCA, no circuit had recognized a private right of action under section 1252. The decisions, including one by our own court, unanimously held that no private cause of action exists under the statute.[3]

■ The intended target of section 225 thus must have been our Ninth Circuit law allowing mandamus relief. In *Silveyra* this court recognized that section 1252(i) primarily was enacted to avoid the high costs of extended incarceration:

> [a]lthough 8 U.S.C. § 1252(i) was apparently enacted for the benefit of taxpayers rather than incarcerated aliens, [citation omitted], Silveyra's suit advances the stated Congressional purpose of reducing prison overcrowding caused by INS delay, and thus Silveyra falls within the 'zone of interests' protected by § 1252(i).

*Silveyra,* 989 F.2d at 1014 n. 1. Congress took the opportunity in section 225 of the INTCA to clarify for our benefit that section 1252(i) does not create an obligation on the part of the government toward individual incarcerated aliens and that such aliens lack standing to sue for any relief under section 1252 because they are outside the "zone of interests" of the statute. The scant legislative history of section 225 supports our reading of the section's language. *See* 140 Conf.

Rec. H11292 (daily ed. Oct. 7, 1994) (statement of Rep. Brooks) (section 225 "clarifies that ... the requirement in current law of speedy deportation for criminal aliens do[es] not create enforcement rights against the United States."). By enacting section 225, Congress made clear that the sole purposes of section 1252(i) are economic, not humanitarian.

The result we reach is consistent with that reached by the Tenth Circuit in the only other post-INTCA case to have reached the appellate courts. *See Hernandez–Avalos v. INS,* 50 F.3d 842, 844 (10th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 92, — L.Ed.2d —— (1995).

■ Appellant's appointed counsel also contests the district court's dismissal of petitioner's habeas and APA claims. We affirm the denial of relief on these grounds as well. This court has recently concluded that "the bare detainer letter alone does not sufficiently place an alien in INS custody to make habeas corpus available." *Garcia,* 40 F.3d at 303. Additionally, our law is clear that APA claims are not viable in the section 1252(i) context. *See Silveyra,* 989 F.2d at 1015 ("no claim under the [APA] because 'immigration proceedings ... are not governed by the APA.'") (citing *Ardestani v. INS,* 502 U.S. 129, 133, 112 S.Ct. 515, 518, 116 L.Ed.2d 496 (1991)); INTCA, § 225 (no judicially enforceable benefits or rights under section 1252(i)).

AFFIRMED.

---

**3.** *See Urbina–Mauricio v. INS,* 989 F.2d 1085 (9th Cir.1993) (no private right of action under § 1252(i)); *Aguirre v. Meese,* 930 F.2d 1292, 1293 (7th Cir.1991) (same); *Prieto v. Gluch,* 913 F.2d 1159, 1166 (6th Cir.1990) (same), *cert. denied,* 498 U.S. 1092, 111 S.Ct. 976, 112 L.Ed.2d 1061 (1991); *Orozco v. INS,* 911 F.2d 539, 541 (11th Cir.1990) (same); *cf. Gonzalez v. INS,* 867 F.2d 1108, 1109–10 (8th Cir.1989) (no private right of action under § 1252(i), therefore mandamus not available).