### The UNITED STATES of America

v.

### Jaime Emilio LOPEZ, Defendant.

### Criminal No. 91–199–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 9, 1996.

---

Jaime E. Lopez, Estill, SC, pro se.

Helen F. Fahey, United States Attorney, Robert A. Spencer, Assistant United States Attorney, Alexandria, VA, for U.S.

## MEMORANDUM OPINION

ELLIS, District Judge.

The matter is before the Court on defendant's motion for immediate deportation pursuant to 8 U.S.C. § 1252(h)(2)(A). On receipt of this motion, the Court, by Order dated July 16, 1996, directed the government to file a response and permitted defendant to file a reply to the government's response.[1] The parties complied with the July 16 Order, the government filing its Opposition on August 12, 1996 and defendant filing his Response to the Government's Opposition on September 10, 1996.[2] Accordingly, the matter is now ripe for disposition.

---

1. In this Order, defendant was advised as follows:

   [D]efendant must identify all facts stated by the government with which defendant disagrees and must set forth defendant's version of the facts by offering affidavits (written statements signed before a notary public and under oath) or by filing sworn statements (bearing a certificate that it is signed under penalty of perjury). This reply may also consist of legal arguments and cases opposing any legal arguments contained in the government's brief.

2. In his response to the government's submission, defendant asserts, for the first time, a new ground for compelling immediate deportation.

Specifically, defendant asserts that 18 U.S.C. § 3583(d) supports his quest for compulsory immediate deportation, relying on *United States v. Chukwura*, 5 F.3d 1420 (11th Cir.1993), *cert. denied*, — U.S. —, 115 S.Ct. 102, 130 L.Ed.2d 51 (1994). This argument is meritless. *Chukwura* discusses a court's discretionary authority to order deportation as a condition of supervised release, and provides *no basis for compelling a court or any agency of the United States to exercise its deportation authority*. In any event, the Fourth Circuit has specifically declined to follow *Chukwura*, holding that a court may not order deportation, but may only order a defendant to surrender to the INS for deportation proceedings. *United States v. Xiang*, 77 F.3d

## I.

Defendant, it appears, is a Panamanian citizen who, according to the Presentence Investigation Report, is a permanent resident alien. On July 19, 1991, defendant pled guilty to conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. He was thereafter sentenced to 144 months in prison, to be followed by 5 years of supervised release. No fine was imposed on defendant, nor was he ordered to pay the costs of incarceration or supervised release in view of his apparent lack of ability to pay either. He was, however, ordered to pay the $50 statutory special assessment, pursuant to 18 U.S.C. § 3013.

Now, long prior to the completion of his term of imprisonment, defendant, citing 8 U.S.C. § 1252(h), moves the Court to order his immediate deportation. For the reasons that follow, this motion must be denied.

## II.

■ Defendant's reliance on § 1252(h) is wholly misplaced. This section affords no basis, substantively or procedurally, for defendant to compel the Immigration and Naturalization Service to deport him or to institute deportation proceedings against him. By its plain terms it authorizes neither a private cause of action, or a mandamus action to compel deportation. Rather, this section merely vests the Attorney General with discretion to deport aliens convicted of crimes prior to completion of their sentences, provided the crime is "non-violent" and provided further that deportation is both "appropriate and in the best interest of the United States." [3]

Given this, there are three independent obstacles to plaintiff's requested relief: (1) § 1252(h), which creates no private cause of action, is discretionary; it allows, but does not require, the Attorney General to deport an alien prior to the completion of a sentence, (2) § 1252(h) applies only where the convicted offense is a nonviolent crime,[4] and (3) § 1252(h) should be invoked by the Attorney General only if "appropriate" and in the "best interest of the United States." Even assuming that defendant can overcome the second and third obstacles, the first of these obstacles is insurmountable and dispositive of defendant's motion.

There can be no serious dispute that § 1252(h)(2)'s plain terms create no private cause of action and merely allow, not require, deportation in certain circumstances should the Attorney General, in her discretion, choose to do so. The provision is not a key criminal aliens can use to unlock their prison doors before the end of their sentences. The only reported decision on this point, *United*

771, 773 (4th Cir.1996). Thus, any reliance on 18 U.S.C. § 3583(d) and *Chukwura* is wide of the mark.

**3.** Section 1252(h), as amended April 24, 1996, states in pertinent part, as follows:

(1) Except as provided in paragraph (2), an alien sentenced to imprisonment may not be deported until such imprisonment has been terminated by the release of the alien from confinement. * * *
(2) The Attorney General is authorized to deport an alien in accordance with applicable procedures under this chapter prior to the completion of a sentence of imprisonment—
(A) in the case of an alien in the custody of the Attorney General, if the Attorney General determines that (i) the alien is confined pursuant to a final conviction for a nonviolent offense (other than alien smuggling), and (ii) such deportation of the alien is appropriate and in the best interest of the United States; ....
8 U.S.C. § 1252(h). Before it was amended, § 1252(h) provided, as follows:

An alien sentenced to imprisonment shall not be deported until such imprisonment has been terminated by the release of the alien from confinement. Parole, supervised release, probation, or possibility of rearrest or further confinement in respect of the same offense shall not be a ground for deferral of deportation.

**4.** It appears, via a somewhat circuitous route, that conspiracy to distribute cocaine is a "nonviolent offense" under § 1252(h)(2)(A). While subsection (h)(2)(A) does not define such offenses, 8 U.S.C. § 1252a, which is also in Chapter 12, incorporates the definition of "aggravated felony" in 8 U.S.C. § 1101(43), which, in turn, incorporates the definition of "crime of violence" in 18 U.S.C. § 16. And, under 18 U.S.C. § 16, conspiracy to distribute illegal drugs and possession with intent to distribute illegal drugs, have been held not to be "crimes of violence" for the purposes of other criminal statutes. *See, e.g., United States v. Diaz*, 778 F.2d 86 (2nd Cir.1985) (finding narcotics offenses do not constitute crimes of violence within meaning of sentencing enhancement provisions of 18 U.S.C. § 924(c)).

*States v. Casas,* 929 F.Supp. 1317 (C.D.Cal. 1996), quickly reached this same conclusion in denying a motion identical to this defendant's motion. As that court put it, "[u]nder the plain terms of section 1252(h)(2), only the Attorney General may initiate such a deportation. Neither the defendant nor the court can initiate it." *Id.* at 1318.

This conclusion is confirmed by a reading of § 1252(h)(2)'s companion statutory provisions in Chapter 12 of Title 8. And reading these provisions in aid of construing § 1252(h)(2) is compelled both because § 1252(h)(2) specifically requires application of its provisions "in accordance with applicable procedure under this chapter," and because statutes *in pari materia* must be construed together.[5] Indeed, taken as a whole Chapter 12 establishes a comprehensive and coherent scheme governing deportation of criminal aliens that is at odds with defendant's construction of § 1252(h)(2).

■ Section 1252 of Title 8 deals generally with the apprehension and custody of all deportable aliens. Subsections (h), (i), and (j), along with § 1252a, supplement the general deportation procedures, establishing procedures applicable specifically where a deportable alien has been convicted of a criminal offense. Until 1986, the only provision in § 1252 concerning the deportation of criminal aliens was the pre-amendment version of § 1252(h), which commanded that convicted aliens not be deported until release from confinement.[6] In 1986, Congress enacted § 1252(i) to require the Attorney General to begin deportation proceedings against criminal aliens "as expeditiously as possible after the date of completion."[7] The sole purpose of this provision was to end the INS practice of postponing deportation hearings until a convicted alien completed his sentence, a practice that typically resulted in extending an alien's period of incarceration, thereby imposing an additional burden on limited federal and state prison resources.[8] Thus, in enacting § 1252(i), Congress' concern was not to create a private action whereby a criminal alien might compel deportation before the completion of a sentence; rather, Congress' concern was to give the Attorney General the means to lessen the economic burden caused by the need for continued detention of criminal aliens who have completed their sentences, but whose deportation proceedings are pending.[9] Significantly, § 1252(i) specifically directs that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States on its agencies or officers or any other person."[10]

---

**5.** *See United States v. Morison,* 844 F.2d 1057, 1064 (4th Cir.1988), *cert. denied,* 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 247 (1988) ("When a statute is a part of a larger Act ... the starting point for ascertaining legislative intent is to look to other sections of the Act in pari materia with the statute under review.").

**6.** *See supra,* note 3.

**7.** Section 1252(i), as subsequently amended, provides, as follows:

In the case of an alien who is convicted of an offense which makes the alien subject to deportation, the Attorney General shall begin any deportation proceeding as expeditiously as possible after the date of the conviction. Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.

**8.** *See Soler v. Scott,* 942 F.2d 597 (9th Cir.1991) (purpose of § 1252(i) is to reduce need for incarcerating criminal aliens after service of their sentence), *vacated as moot sub nom Sivley v.*

*Soler,* 506 U.S. 969, 113 S.Ct. 454, 121 L.Ed.2d 364 (1992). Though this decision was vacated as moot, its discussion of the purpose underlying the addition of § 1252(i) is sound, and has been reaffirmed in subsequent decisions. *See, e.g., Campos v. INS,* 62 F.3d 311, 314 (9th Cir.1995).

**9.** During the floor debates on the Act which added subsection (i) to § 1252, Senator Dole observed:

They [convicted aliens] are occupying space that is desperately needed. They are costing the taxpayers millions for their board and keep.

132 Cong.Rec. S16909 (October 17, 1986).

**10.** This language was added to § 1252(i) by § 225 of the Immigration and Nationality Technical Corrections Act of 1994, Pub.L. No. 103–416, 108 Stat. 4305 ("INTCA"). Before this amendment, the circuit courts had unanimously held no private cause of action existed under § 1252(i). *See Campos v. INS,* 62 F.3d 311, 314 (9th Cir.1995) (citing circuits finding no private cause of action under section). Yet, a line of

After § 1252(L) came § 1252a, which Congress enacted in 1988 to provide the INS with specific procedural guidance for expediting deportation of aliens who are convicted of certain "aggravated felonies."[11] Section 1252a reiterates § 1252(i)'s requirement that the Attorney General expedite the initiation of deportation proceedings. And § 1252a's language makes clear that expedited deportation proceedings are not for the purpose of deporting defendants prior to completion of a criminal sentence. In fact, § 1252a specifically states that the purpose of this expedited process is to "eliminate the need for any additional detention at the processing center of the Service and ... to [assure] expeditious deportation, where warranted, following the end of the alien's incarceration for the underlying sentence." 8 U.S.C. § 1252a(a)(1). This section makes it pellucidly clear that Congress did not intend Chapter 12 deportation proceedings to be a criminal alien's ticket for early release. Thus, § 1252a(a)(3)(B) specifically states that "[n]othing in this section shall be construed as requiring the Attorney General to effect the deportation of any alien sentenced to actual incarceration, before release [of the alien] from the penitentiary or correctional institution where such alien is confined."

Finally, in 1994, Congress added subsection (j) to provide the Attorney General with the authority and funding to compensate states or localities for the costs of incarcerating criminal aliens. This was Congress' last significant substantive amendment of § 1252 prior to the 1996 amendment of subsection (h), the provision here at issue.

■ These, then, are Chapter 12's principle provisions. And viewed as an integrated whole they provide a comprehensive plan for addressing the deportation of criminal aliens. This plan requires the Attorney General to commence deportation hearings during a criminal alien's incarceration so that these proceedings may be concluded prior to the completion of the alien's criminal sentence. This, in turn, means that the alien can then be promptly deported at the end of his sentence without the need for continued detention at public expense. But significantly, the Chapter 12 plan, as § 1252a reflects, contemplates that with one narrow exception, criminal aliens will complete serving their sentences before they are deported. That narrow exception is § 1252(h)(2), under which the Attorney General has discretion to deport a narrow subset of the larger group of deportable aliens serving criminal sentences.

Given this, it is plain that defendant's proffered construction of § 1252(h)(2) is sharply at odds with the comprehensive plan set out in Chapter 12. In the first place, defendant's contention that § 1252(h)(2) is mandatory is contradicted by the section's plain language and by the sharp contrast between the language Congress used in that section and the very different language used in §§ 1252a and (i). Section 1252(h)(2) merely *"authorizes"* the Attorney General to deport certain criminal aliens, whereas § 1252(i) and § 1252a state that the Attorney General *"shall"* begin or expedite deportation proceedings for criminal aliens. The former language plainly implies discretion whereas the latter language is plainly mandatory.[12] Also at odds

---

cases from the Ninth Circuit determined that incarcerated aliens did have standing to seek mandamus to force the INS to start deportation proceedings. *See, e.g., Garcia v. Taylor,* 40 F.3d 299, 301 (9th Cir.1994). After INTCA, the Ninth Circuit correctly observed that "the target of [INTCA § 225] thus must have been our Ninth Circuit law allowing mandamus relief." *Campos,* 62 F.3d at 314. Congress clarified that the "sole purposes of section 1252(i) are economic, not humanitarian," thus incarcerated aliens are outside of the "zone of interests" of the section, and have no standing to sue for its enforcement. *Id.*

**11.** This section requires that deportation proceedings be held at certain Federal, state and

local correctional facilities so that these proceedings may be concluded before the completion of a criminal sentence. It also sets out procedures for notice to the incarcerated alien subject to deportation proceedings, and for review of deportation proceedings conducted pursuant to § 1252a.

**12.** Although § 1252(i) mandates action by the Attorney General, there is some ambiguity in the timing of this action. The phrase "as expeditiously as possible" is not defined. The section does not address whether the Attorney General should await exhaustion of appeals. Nor does it address whether the phrase has different meaning depending upon whether criminal defendant

with defendant's position is Chapter 12's explicit exclusion, as reflected in § 1252(i), of any private cause of action to enforce its provisions. Nor is it plausible to argue that this explicit exclusion applies only to § 1252(i) and not to § 1252(h)(2) as well, for the Chapter 12 criminal alien deportation plan is integral scheme and the statute it contains must be read and construed *in pari materia.* Put another way, even assuming, *arguendo,* that § 1252(h)(2) can be construed as non-discretionary, it would make no sense to allow a private cause of action to enforce the provision, given that it covers only a narrow subset of the broader group of criminal aliens governed by the other portions of Chapter 12, as to which Congress has explicitly rejected of any private enforcement cause of action. *See* 8 U.S.C. § 1252(i). And finally, it would similarly make no sense to construe § 1252(h)(2) to mandate deportation of criminal aliens prior to the end of their sentences given that § 1252(h)(2) applies only to a subclass of the criminal aliens covered by § 1252a, which provision expressly rejects mandatory deportation prior to sentence completion.

In sum, § 1252(h)(2)'s language and context compel the conclusion that the provision is discretionary with the Attorney General and creates no private cause of action to compel deportation. Chapter 12 as a whole reflects that Congress generally expects incarcerated aliens to complete their terms of imprisonment, requiring expedited proceedings only to ensure that deportation occurs immediately following the completion of sentence. Section § 1252(h)(2) does not alter this general scheme, but merely carves out a narrow exception to this rule by giving the Attorney General the discretion, in certain circumstances, to deport an alien before the completion of a term of incarceration.

Accordingly this motion must be denied. An appropriate order will enter.

is sentenced to twenty years or six months. The ambiguity of the phrase leaves open the possibility that while the duty is mandatory, the timing may be somewhat discretionary.