[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12679
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cr-00109-AT-JSA-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RYAN VINCENT HILL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 25, 2018)

Before TJOFLAT, JULIE CARNES, and NEWSOM, Circuit Judges.

PER CURIAM:

Following an armed bank robbery, Defendant Ryan Hill was charged with conspiracy to commit Hobbs Act robbery, armed bank robbery, and aiding and abetting the brandishing of a firearm during a crime of violence. He pled guilty to the two former charges and went to trial on the latter. After the jury returned a guilty verdict, the district court sentenced him to 205 months' imprisonment. Defendant now raises three arguments on appeal. First, he challenges the sufficiency of the evidence to support his conviction for aiding and abetting the brandishing of a firearm during a crime of violence. He also challenges the district court's imposition of a two-level enhancement under U.S.S.G. § 2B3.1(b)(4)(B) for the use of physical restraint on the robbery victims. Finally, he argues that the district court clearly erred by denying him a reduction for acceptance of responsibility. After careful review, we affirm.

## I.  BACKGROUND

### A.  Facts[1]

At approximately 9:30 AM on February 27, 2015, three masked men entered a Wells Fargo Bank in Atlanta, Georgia and held it up for approximately $22,000. The men entered the bank from the front door—the bank's only entrance.

---

[1] These facts are derived from those facts Defendant admitted to during his guilty plea colloquy on Counts 1 and 2, as well as those facts presented during trial on Count 3. Because the jury found Defendant guilty on Count 3, all reasonable inferences and credibility determinations are resolved in favor of the jury's verdict. *See United States v. Doe*, 661 F.3d 550, 560 (11th Cir. 2011).

Witnesses distinguished the robbers based on their relative statures. The biggest robber—later identified as Kayode Adeleye—entered the bank first, immediately jumped over the counter, and started demanding cash. The medium-sized robber—later identified as Bruce Brown—guarded the door. The smallest robber—later identified as Defendant—entered the bank last and immediately went behind the counter with Adeleye. Adeleye and Brown brandished firearms during the robbery.

Vada Faniel, a bank teller, was behind the teller counter when Adeleye came directly toward him demanding cash. Adeleye held a gun at Faniel's side, and when Faniel had trouble opening the coin vault, Adeleye said "you must want to get shot" or "you must want to die." Other witnesses heard Adeleye say, "Somebody is going to die today." Witnesses believed that the robbers were working together because they entered the bank together, their disguises were coordinated, and they each appeared to have assigned roles.

After obtaining nearly $22,000, Adeleye, Brown, and Defendant fled the bank in a Nissan Xterra. They drove to a nearby parking lot where Xavier Shields was waiting with another vehicle: a Mercedes AMG that had been leased by Defendant. Adeleye, Brown, and Defendant got into the AMG and headed to Shields' apartment. Law enforcement officers were eventually able to locate the AMG through GPS tracking devices that had been placed in the stolen currency.

3

Before arriving at Shields' apartment, Adeleye, Brown, and Defendant discarded the evidence, including the disguises, firearms, and stolen currency—most of which was later recovered by law enforcement officers.

## B.    Procedural History

A federal grand jury charged Defendant in a superseding indictment with: (1) conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count 1); (2) armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), (d) and 2 (Count 2); and (3) aiding and abetting the brandishing of a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Count 3). Defendant later pled guilty without a plea agreement to Counts 1 and 2, but proceeded to trial on Count 3.

At trial, the Government presented testimony from several witnesses, including Defendant's co-defendant, Adeleye. Adeleye testified that he participated in the February 27 bank robbery with Defendant and Brown. Adeleye explained that he and Defendant came up with an elaborate plan for the robbery approximately two weeks ahead of time. Defendant selected the bank and figured out possible escape routes. Together, they decided that Brown would guard the door and Adeleye and Defendant would retrieve the money from behind the counter. After the robbery, they planned to switch cars and then meet up at Shields' apartment.

Adeleye stated that they had planned to rob the bank on February 26. That day they met up at Shields' apartment and drove to a parking lot near the bank where they planned to switch cars after the robbery. While in the parking lot, Defendant handed Adeleye the "Glock 40 firearm" that he was going to use in the robbery. Brown had his own firearm. After putting on their disguises, they proceeded to the bank. They got nervous, however, when they saw police officers near the bank and decided to call off the robbery. They went back to Shields' apartment and decided to attempt the robbery the next day.

They met up again the next morning, February 27, and drove together to the switch-location near the bank. Once in the parking lot, they put on their disguises and Defendant again provided Adeleye with the gun he was to use during the robbery. They drove to the bank in the Nissan Xterra. Adeleye got out of the car first, followed by Brown, and finally Defendant. Adeleye and Brown had their guns out when Defendant entered the bank. Adeleye explained that the purpose of having the guns out was so that the bank occupants would know it was an "actual robbery."

At the close of the Government's case-in-chief, Defendant moved for judgment of acquittal, arguing that the Government presented insufficient evidence showing that he had advance knowledge that firearms would be brandished during

5

the robbery.  The court denied the motion.  The jury found Defendant guilty on Count 3, and specifically found that a firearm was brandished during the robbery.

In preparation for sentencing, the probation officer prepared the Presentence Investigation Report (PSR).  With respect to Counts 1 and 2, the PSR assigned Defendant a base offense level of 20 pursuant to U.S.S.G. § 2B3.1.  Defendant received several enhancements, including (1) a two-level enhancement under U.S.S.G. § 2B3.1(b)(1) because property from a financial institution was taken, (2) a two-level enhancement under § 2B3.1(b)(4)(B) because a person was physically restrained to facilitate the offense, and (3) a one-level enhancement under § 2B3.1(b)(7)(B) because the loss was more than $20,000 but less than $95,000.  Defendant also received a two-level enhancement under U.S.S.G. § 3C1.2 for reckless endangerment during flight and a three-level enhancement under § 3C1.3 because the offense was committed while Defendant was on release for another federal offense, specifically conspiracy to commit bank fraud in the District of South Dakota.

The PSR did not apply a reduction for acceptance of responsibility, resulting in a total offense level of 30.  With a total offense level of 30 and a criminal history category of III, Defendant's guideline range was 121 to 151 months' imprisonment as to Counts 1 and 2.  The PSR noted that Defendant was subject to a mandatory

minimum 84-month sentence as to Count 3, to be served consecutively to all other sentences.

Relevant to this appeal, Defendant objected to the two-level physical-restraint enhancement under § 2B3.1(b)(4)(B) and the denial of a reduction for acceptance of responsibility. At sentencing, the district court addressed Defendant's objections to the PSR. As to the physical-restraint enhancement, Defendant argued that the victims were necessarily restrained by the presence of a gun during the armed robbery, and that without some additional conduct such as moving victims to another place, the application of the enhancement constituted impermissible double counting. The Government responded that Defendant qualified for the physical-restraint enhancement because he aided and abetted Adeleye and Brown, both of whom had pointed guns directly at victims to restrain them. The court agreed and overruled the objection.

As to the reduction for acceptance of responsibility, Defendant argued that he had cooperated and pled guilty to Counts 1 and 2. He asserted that his decision to go to trial on Count 3, which charged him with aiding and abetting the use, carrying, or brandishing of a firearm during the bank robbery, was not inconsistent with his guilty plea to Count 2, which charged him with aiding and abetting the armed bank robbery. The court overruled Defendant's objection. After confirming that the guidelines range was 121 to 151 months' imprisonment as to Counts 1 and

2, followed by a consecutive 84-month sentence on Count 3, the district court sentenced Defendant to 205 months' imprisonment:  that is, to 121 months on the first two counts and to 84 months consecutive on the third count.

Before entry of judgment, Defendant filed a supplemental sentencing memorandum in which he argued that the district court committed procedural error by failing to address whether his sentence should run concurrently or consecutively to the 57-month sentence he had earlier received for bank fraud in South Dakota. The court vacated Defendant's sentence, and following a hearing limited to the issue presented in the sentencing memorandum, the court sentenced Defendant to 121 months as to Counts 1 and 2, with 24 months of that sentence to be served concurrently with Defendant's 57-month sentence in South Dakota, followed by 84 months' imprisonment as to Count 3, to be served consecutively to all Defendant's other sentences. This appeal followed.

## II.    DISCUSSION

### A.    Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to find him guilty beyond a reasonable doubt of aiding and abetting the § 924(c) charge because the Government failed to show that he had advance knowledge that his co-defendants would be carrying guns.

We review *de novo* whether the evidence was sufficient to sustain a criminal conviction. *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). In reviewing the denial of a motion for judgment of acquittal, we view the evidence in the light most favorable of the jury's verdict. *Id.* The evidence will be sufficient to sustain a conviction if a reasonable trier of fact could find that it established the defendant's guilt beyond a reasonable doubt. *Id.* at 1284–85. When the Government relies on circumstantial evidence, the conviction must be supported by reasonable inferences, not mere speculation. *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011).

Defendant was convicted of aiding and abetting the brandishing of a firearm during a crime of violence under § 924(c). Section 924(c) provides for a sentence of not less than seven years if a defendant brandishes a firearm during or in relation to a crime of violence. 18 U.S.C. § 924(c)(1)(A)(ii). In *Rosemond v. United States*, the Supreme Court explained that to sustain a conviction for aiding and abetting a § 924(c) charge, the Government must show that a defendant (1) actively participated in the crime of violence and (2) had advance knowledge that his confederates would bring a gun, such that he had an opportunity to withdraw from the offense. 134 S. Ct. 1240, 1248–50 (2014). Defendant does not appear to contest that he actively participated in the armed bank robbery. Instead,

he argues only that the Government failed to establish that he had advance knowledge that his co-defendants would be carrying guns. We disagree.

Based on the evidence presented at trial, a reasonable jury could infer that Defendant had advance knowledge that his co-defendants would carry guns, even though he did not carry a gun himself. At trial, Adeleye testified multiple times that Defendant gave him the firearm that he used during the robbery. Adeleye also testified that he and Defendant planned the robbery together and that they decided to use guns so that the people in the bank would know it was an "actual robbery." This testimony was corroborated by bank employees, who stated that the robbery appeared to be planned and coordinated because the robbers knew what to do and each had assigned roles.

A reasonable jury could also infer that Defendant could see the guns as he entered the bank—and therefore had a reasonable opportunity to turn around and walk away. *See Rosemond*, 134 S. Ct. at 1249–50 (explaining that advance knowledge means "knowledge at a time the accomplice can do something with it—most notably, opt to walk away"). Witness testimony established that Adeleye and Brown had their guns out as they entered the bank and that Defendant entered the bank after them. In fact, surveillance footage showed Brown holding his gun on the side facing Defendant as Defendant entered the bank.

10

Further, Jordan Peyton, a personal banker, testified that Defendant remained calm and did not seem surprised by the guns when he entered the bank. Instead, Defendant immediately went behind the counter with Adeleye. Faniel, one of the bank tellers, testified that at one point Defendant was "[p]robably like 3 feet" away from where Adeleye was standing with the gun behind the counter. Given Defendant's calm demeanor and continued participation in the robbery after entering the bank where Adeleye and Brown already had their guns out, the jury could reasonably infer that Defendant had advance knowledge that his accomplices would carry guns. *See Rosemond*, 134 S. Ct. at 1250 n.9 ("[I]f a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge.").

Defendant argues that the Government presented insufficient evidence to support his conviction because Adeleye was not a credible witness. Credibility issues, however, are within the province of the jury, and we assume that the jury resolved all such questions in the manner supporting the verdict. *United States v. Garcia-Bercovich*, 582 F.3d 1234, 1238 (11th Cir. 2009). Although Defendant identifies some inconsistencies in Adeleye's testimony, that testimony was based on first-hand knowledge and was largely consistent with the testimony of bank employees regarding the sequence of events inside the bank. We are also not

11

persuaded by Defendant's contention that is impossible that Defendant would provide Adeleye with a gun but not use a gun himself. *See United States v. Feliciano*, 761 F.3d 1202, 1206 (11th Cir. 2014) (explaining that we may not revisit credibility determinations unless the testimony is incredible as a matter of law, meaning the witness could not have observed it or the testimony could under have occurred in the laws of nature).

In short, a reasonable jury could have found beyond a reasonable doubt that Defendant aided and abetted the brandishing of a firearm during a crime of violence.

### B.    Physical-Restraint Enhancement

Defendant argues that the district court erred by applying the two-level physical-restraint enhancement under U.S.S.G. § 2B3.1(b)(4)(B) because he did not carry a gun during the robbery.

We review the district court's application of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v. Victor*, 719 F.3d 1288, 1290 (11th Cir. 2013). Section 2B3.1(b)(4)(B) of the Sentencing Guidelines provides that a two-level enhancement applies "if any person was physically restrained to facilitate commission of the offense or to facilitate escape." U.S.S.G. § 2B3.1(b)(4)(B). The enhancement applies in "robberies where a victim was forced to accompany the defendant to another location, or was physically

12

restrained by being tied, bound, or locked up." *Id.*, background.  Our precedent

makes clear, however, that the enhancement is not limited to these examples, as we

have applied the enhancement when the defendant's conduct "ensured the victims'

compliance and effectively prevented them from leaving a location."  *Victor*, 719

F.3d at 1290 (quotation omitted).

Here, the district court did not err by applying the physical-restraint

enhancement under § 2B3.1(b)(4)(B).  The evidence presented at trial showed that

Adeleye pointed a gun at Faniel and demanded that he give him the funds from his

drawer.  Whether or not that conduct would be sufficient to trigger the physical-

restraint enhancement, the conspirators did more.  Specifically, Adeleye forced a

teller named David to lie face down on the ground and not move.  Brown ordered

the personal bankers to put their hands up and to move away from their desks so

that they could not trigger the alarm.  Because Adeleye's and Brown's conduct

ensured the victims' compliance and effectively prevented them from leaving the

bank, the victims were physically restrained within the meaning of the Guidelines.

*See Victor*, 719 F.3d at 1290–91 (holding that the defendant physically restrained

the victim by threatening her with what she believed to be a gun to prevent her

escape); *see also United States v. Jones*, 32 F.3d 1512, 1519 (11th Cir. 1994)

(holding the physical-restraint enhancement applied where robbers forced credit

13

union employees into the safe room at gun point and ordered them to lie on the floor).

Defendant was found guilty of aiding and abetting Adeleye and Brown in the brandishing of firearms during the armed bank robbery. The relevant conduct provision of the Guidelines provides that specific offense characteristics—such as the physical-restraint enhancement—are determined by all acts and omissions aided and abetted by a defendant. U.S.S.G. § 1B1.3(a)(1)(A). Because Defendant aided and abetted the actions of Adeleye and Brown, he is responsible for their physical restraint of the bank occupants. *See id.*

We are not persuaded by Defendant's argument that, given his conviction under 924(c), the application of the two-level enhancement for physical restraint constitutes impermissible double counting. "Impermissible double counting occurs only when one part of the Sentencing Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Asante*, 782 F.3d 639, 647 (11th Cir. 2015) (alteration accepted) (quotations omitted). Defendant is not challenging the application of two different Guidelines provisions. Instead, he is challenging the application of a Guidelines' enhancement and a statutory-minimum sentence under § 924(c). *See id.* Moreover, Defendant's double-counting claim lacks merit. One can brandish a

14

gun without necessarily physically restraining another person. Accordingly, the district court did not err by applying the two-level enhancement under § 2B1.3(b)(4)(B).

### C.    Acceptance of Responsibility Reduction

Defendant also challenges the district court's denial of a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. As noted, Defendant pled guilty to two counts charged in the indictment: conspiracy to interfere with commerce by robbery (Count 1) and armed bank robbery (Count 2). However, he insisted on a trial as to Count 3, which charged him with aiding and abetting the brandishing of a firearm during the above armed bank robbery. Defendant argues that even though he went to trial as to Count 3 and did not accept responsibility for that conduct, he should nonetheless receive a two-level reduction based on his plea of guilty on Counts 1 and 2.

We review for clear error the district court's denial of a reduction for acceptance of responsibility. *United States v. Amedeo*, 370 F.3d 1305, 1320 (11th Cir. 2004). Indeed, when it comes to reviewing a sentencing court's decision whether to award a reduction based on a defendant's acceptance of responsibility, we give "great deference" to that court's decision "due to its unique position to evaluate a defendant's acceptance of responsibility." *United States v. Sammour*,

816 F.3d 1328, 1341 (11th Cir. 2016) (quoting *United States v. Chukwura*, 5 F.3d 1420, 1424 (11th Cir. 1993)).

A defendant who pleads guilty to only some of the charges against him, while going to trial on other of those charges, typically faces an uphill battle in persuading an appellate court to reverse the district court's denial of credit for acceptance of responsibility.  In *United States v. Thomas*, 242 F.3d 1028, 1034 (11th Cir. 2001), we upheld the district court's denial of a reduction for acceptance of responsibility for a defendant who had pled guilty to the drug counts of an indictment, but who had gone to trial on the charge alleging that the defendant, a felon, had possessed a firearm.  *Id.* at 1030.  We held that "[a] defendant who fails to accept responsibility for all of the crimes he has committed and with which he has been charged is entitled to nothing under § 3E1.1."  *Id.* at 1034.  We explained that "[w]hen a defendant indicted on multiple counts goes to trial on any of those counts, the systemic costs of trial are not obviated although they may be reduced to some extent."  *Id.*  Moreover, "a defendant who is unwilling to accept responsibility for some of the charges against him has not really 'come clean' and faced up to the full measure of his criminal culpability."  *Id.*; *see also Sammour*, 816 F.3d at 1341 (concluding that a defendant who pled guilty to two counts of theft of public money had frivolously contested relevant conduct by going to trial

16

on two counts of aggravated identity theft and was not entitled to a reduction for acceptance of responsibility).

But even assuming that there might be some situations in which a defendant is entitled to a reduction for acceptance of responsibility when he has pled to only some of the charges against him while going to trial on others, this is not one of those scenarios. Indeed, although entry of a guilty plea may typically imply an acceptance of responsibility by a defendant, the impact of that guilty plea "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1, comment. (n.3). As to the standards that guide a district court in its decision, § 3E1.1(a) of the Sentencing Guidelines provides that a defendant is eligible for a two-level reduction in his offense level if he clearly demonstrates acceptance of responsibility. U.S.S.G. § 3E1.1(a). To determine whether a defendant has clearly accepted responsibility, a court may consider whether the defendant has "truthfully admitt[ed] the conduct comprising the offense(s) of conviction" and "truthfully admitt[ed] or not falsely den[ied] any additional relevant conduct for which the defendant is accountable." U.S.S.G. § 3E1.1, comment. (n.1(A)). The burden is on the defendant to demonstrate that he has shown acceptance of responsibility and he must show more than just the entry of a guilty plea. *United States v. Sawyer*, 180 F.3d 1319, 1323 (11th Cir. 1999).

Here, the district court did not clearly err by denying Defendant a two-level reduction for acceptance of responsibility under § 3E1.1(a) because Defendant did not truthfully admit the conduct comprising the offenses of conviction.  Although Defendant pled guilty to Counts 1 and 2—thereby admitting that he conspired to commit a robbery and that he aided and abetted the armed robbery—he went to trial on Count 3, which charged him with aiding and abetting the use, carrying, or brandishing of a firearm during the robbery.  The jury found him guilty beyond a reasonable doubt of this crime.  Defendant did not truthfully admit to this fact, which was one of the most aggravating aspects of the bank robbery in which he was involved.  Defendant's refusal to acknowledge conduct that was an integral part of the bank robbery and represented one of its most disturbing aspects supports the district court's decision not to reduce his sentence based on acceptance of responsibility.[2]

_____

[2]  We further note that the Guidelines for robbery also include, as relevant conduct, the possession or use of a firearm during the robbery.  *See* U.S.S.C. § 2B3.1(b)(2).  Specifically, if a firearm was brandished, a defendant's offense level shall be increased by 5 levels.  U.S.S.C. § 2B3.1(b)(2)(C).  Where a defendant is convicted of a separately-charged § 924(c) count based on the brandishing of a weapon during the robbery, as was Defendant here, the mandatory sentence called for by the statute substitutes for the enhancement that the Guidelines would otherwise supply for this conduct.  *See* U.S.S.C. § 2K2.4, comment. (n.4) ("If a sentence under [U.S.S.G. § 2K2.4, the applicable guideline for a § 924(c) conviction] is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense.").  In short, Defendant's Guidelines' calculation was not increased based on the brandishing of a firearm during the offense because that conduct was accounted for in the penalty called for as a result of the § 924(c) conviction.

18

In short, Defendant has failed to show that the district court clearly erred when it declined to award Defendant a reduction for acceptance of responsibility.[3]

## III.    CONCLUSION

For the above reasons, Defendant's convictions and sentences are

**AFFIRMED**.

---

[3] Defendant mentions in his brief that the Sentencing Commission has proposed an amendment to the Guidelines' commentary under U.S.S.G. § 3E1.1.  This amendment would give a sentencing court greater leeway in awarding acceptance of responsibility when a defendant has unsuccessfully challenged certain relevant conduct so long as the challenge is not frivolous.  *See* United States Sentencing Commission, Proposed Amendments to the Sentencing Guidelines 38, (Aug. 25, 2017), *available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20170824_rf_proposed.pdf*.  To the extent Defendant relies on this proposed amendment, it does not control because it is only a proposed amendment that has not yet gone into effect and was certainly not in effect when the district court imposed sentence.  Moreover, the proposed amendment does not deal with a situation in which a defendant has pled to some counts, but nevertheless gone to trial on other counts of the indictment.