**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**FU CHIN CHUNG,
Defendant–Appellant.**

**No. 90–8538
Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

May 13, 1991.

---

**44**

Robert S. Stubbs, III, Canton, Ga., Thomas D. Kerr, Jr., Knoxville, Tenn., for defendant-appellant.

Kent B. Alexander, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, FAY and BIRCH, Circuit Judges.

PER CURIAM:

Appellant appeals his conviction for attempting "to export ... from the United States to London, England, en route to Iran, a defense article, that is, a cathode assembly for a VA–868A Klystron tube used in a Hawk missile battery, which article was designated as a defense article on the United States Munitions List, without having first obtained from the Department of State a license for such export or written authorization for such export, in violation of [the Arms Export Control Act, 22 U.S.C. § ] 2778(b) and (c) and 22 C.F.R. § 127.1." He also appeals his sentence, which was imposed pursuant to the Sentencing Reform Act of 1984, Pub.L. No. 98–473, 98 Stat.1987 (codified as amended in scattered sections of 18 and 28 U.S.C.) and the guidelines promulgated thereunder. We affirm appellant's conviction and his sentence.

Appellant was caught in a "sting" operation conducted by the United States Customs Service. Appellant had been holding himself out as being capable of delivering military equipment, including F–16 aircraft and their parts, and munitions to practically any country on the globe, and the Customs Service, having good reason to believe that he was making such deliveries in violation of federal law, set out to catch him. It did. An undercover agent gave appellant

the cathode assembly described in the indictment and asked him if he could ship it abroad (appellant thought the assembly's ultimate destination was to be Iran, where it would be used in a Hawk missile); appellant replied that he could do so and enlisted a neighbor to act as the courier and carry the missile part to London. Appellant was arrested as the courier was boarding a plane for London.

■ The cathode assembly that appellant attempted to export had been bought by Customs from the manufacturer for use in undercover investigations, such as the one in this case. The assembly was not in working condition, in that the manufacturer had tested the part and found that it did not meet its specifications. Appellant contends that, because the assembly was not operational, it was not included on the United States Munitions List; thus, he could not have committed the offense charged.* We do not agree.

The Arms Export Control Act, 22 U.S.C. § 2778 (1988), authorizes the President to control the export of defense articles such as Hawk missile parts. The Department of State, exercising this authority for the President, has promulgated the International Traffic in Arms Regulations (ITAR), 22 C.F.R. §§ 120.1–130.17 (1990). These regulations include the United States Munitions List, which consists of categories of defense articles that cannot be imported or exported without a license. *Id.* § 121.1. The cathode assembly involved in this case falls within categories IV(h) and XII(c) on that list; thus, any import or export of the assembly must be licensed.

There is nothing in the Arms Export Control Act, its legislative history, or the Department's regulations to support appellant's argument that a defense article must be in working condition to be on the United States Munitions List. In fact, the regulations, and the manner in which they are administered, undermine his argument. For example, 22 C.F.R. § 123.3 requires that a temporary import license issue for any defense article coming into this country for "overhaul, repair, modification, or other purposes." Common sense suggests that if the regulations cover defense articles that may be in need of "repair," they also cover defense articles that are inoperable—as the cathode assembly apparently was here. Indeed, the Office of Munitions Control's Chief of Compliance Analysis reads the regulations this way; he testified, at trial, that the Office treats defective parts as being subject to ITAR's licensing requirements and daily grants licenses for parts coming into and leaving the United States for repair. We find, therefore, as a matter of law, that nonworking defense articles are included in the United States Munitions List.

■ Appellant makes two challenges to his sentence. The first, that the district court erred in enhancing his base offense level by two levels for obstructing justice, *see* Sentencing Guidelines § 3C1.1 (Nov. 1, 1989), is meritless. A sentencing judge's determination that a defendant has "willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense," *id.*, is a factual finding which must be affirmed unless clearly erroneous. *United States v. Cain*, 881 F.2d 980, 982 (11th Cir.1989) (per curiam). Testifying untruthfully at trial regarding a material fact may warrant such a finding and the two-level adjustment called for by guideline 3C1.1. *United States v. Wallace*, 904 F.2d 603, 604 (11th Cir.1990) (per curiam). There is abundant evidence that, as the trial judge observed, appellant testified untruthfully in this case. Accordingly, an enhancement of his base offense level was in order.

■ Appellant's second challenge to his sentence concerns the district court's application of Sentencing Guidelines § 2M5.2 (Nov. 1, 1987). The version of that section in effect when appellant was sentenced, which applies to the "Exportation of Arms, Munitions, or Military Equipment or Services Without Required Validated Export Li-

---

* The trial court did not err, as the appellant contends, in refusing to submit this question to the jury; the question was one of law to be decided by the judge.

cense," specifies a base offense level of 22 if "sophisticated weaponry" was involved; otherwise, the base offense level is 14. Although sophisticated weaponry is not defined, we have no difficulty in concluding that the Hawk missile, and the cathode assembly that is part of its guidance system, constitutes sophisticated weaponry. The Hawk guidance system creates a beam at a classified frequency that illuminates a distant target for the Hawk missile to hit, much like a flashlight lights up a target in a dark room. To create that beam, the guidance system sends twelve to thirteen thousand volts of electricity into a stream of electrons with just enough power to allow the Klystron tube to generate the illuminating beam. In the process, the tip of the cathode assembly heats to approximately 1200 degrees Fahrenheit. This weapons system, including the part appellant attempted to export without a license, is indeed sophisticated.

The appellant's conviction and sentence are

AFFIRMED.