UNITED STATES of America,
Plaintiff–Appellee,

v.

Keyvee JONES, Defendant–Appellant.

No. 93–8445
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Sept. 22, 1994.

James W. Howard, Howard, Jones & Heard, Atlanta, GA, for appellant.

Joe D. Whitley, U.S. Atty., Leo Eugene Reichert, Amy Levin Weil, Asst. U.S. Attys., Atlanta, GA, for appellee.

Before COX, BIRCH and CARNES, Circuit Judges.

PER CURIAM:

This appeal results from conviction for armed bank robbery. We review the district court's denial of a motion for judgment of acquittal based on a duress defense, denial of a motion to suppress statements, and various Guidelines sentencing enhancement challenges, one of which is a first-impression issue for our circuit. We AFFIRM.

## I. BACKGROUND

On May 13, 1992, defendant-appellant Keyvee Jones and former codefendants Jeffrey Arnold and Kenneth White robbed the Lockheed Federal Credit Union at 3260 South Cobb Drive in Smyrna County, Georgia. Witnesses testified that three, masked black males, at least two of whom brandished

weapons, entered the bank and forced the tellers to empty their cash drawers. They then commanded the acting branch manager to open the safe. A total of $19,600 was taken during the robbery. The robbers also ordered employees and customers into the safe room, where they were told to lie face down on the floor. The robbers closed the door to the safe room and left. One of the employees subsequently opened the door and summoned assistance.

Jones and his accomplices ran from the credit union and fled south on South Cobb Drive in Jones's pickup truck, driven by Jones. When a Smyrna Police officer attempted to stop the truck that matched the description of one of the witnesses, a high-speed chase ensued. As the pickup truck proceeded west on Interstate 285, Arnold, who was sitting in the cargo bed of the truck, aimed a gun at the pursuing officer. The officer followed the truck until it hit a tree. While Arnold continued to point a gun at the officer, Jones and White ran into the woods. Arnold then followed them. When another Smyrna Police officer arrived, the abandoned pickup truck was recovered. Inside the truck were two loaded weapons, three stocking masks, a brown vinyl leather zipper bag, a pair of gloves, and a pager.

Jones was arrested on June 2, 1992. After being advised of his *Miranda* rights, Jones signed a waiver of rights form and was interviewed by Federal Bureau of Investigation (FBI) agent. Initially, Jones denied participating in the robbery, but acknowledged that his truck was used. Later, he admitted being part of the robbery, but denied knowing that there was going to be a robbery and limited his participation to driving the truck. After being told of witnesses' accounts, Jones admitted wearing a mask when he entered the bank, but denied having a gun. He identified his codefendants, Arnold and White.

Jones filed a pretrial motion to suppress his postarrest statements. A magistrate judge recommended that Jones's suppression motion be denied. The district court adopted the magistrate judge's report and recommendation and denied Jones's suppression motion. The three defendants were severed for trial.

At trial, the jury heard a recording of Jones's postarrest incriminating statements. Victims of a similar armed robbery of a Blimpie's on April 27, 1992, also testified. Not only did they positively identify Jones as one of two men involved in that robbery, but also they identified their handgun stolen during that robbery as one of the guns used during the robbery of the credit union. Jones testified that he was forced by Arnold and White to participate in the robbery of the credit union, that he carried a bag out of the bank, and that he told his girlfriend to lie to the Smyrna Police by telling them that his truck was stolen.

Jones was convicted on both counts of the indictment for aiding and abetting an armed bank robbery and for possession of a firearm during an armed bank robbery in violation of 18 U.S.C. §§ 2, 2113(a), (d), and 924(c). He was sentenced to 220 months of imprisonment on count one and to sixty months on count two. Jones filed a timely appeal and currently is incarcerated.

## II. DISCUSSION

### A. Denial of Motion for Judgment of Acquittal Based on a Duress Defense

At trial, Jones relied on the affirmative defense that he was under duress or coercion by Arnold and White to participate in the robbery; he further contends that the evidence was sufficient to establish this defense. Thus, Jones claims that the district court improperly denied his motion for judgment of acquittal. To establish that he executed an illegal act under duress, Jones "must show that he acted under an immediate threat of death or serious bodily injury, that he had a well-grounded fear that the threat would be carried out, and that he had no reasonable opportunity to escape or inform police." *United States v. Laetividal–Gonzalez*, 939 F.2d 1455, 1465 (11th Cir. 1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1280, 117 L.Ed.2d 505 (1992).

In support of his duress defense, Jones testified that he did not assist Arnold and White voluntarily. He represents that he entered the bank masked and exited with a bag because Arnold and White kept a gun on him during the robbery. Jones's testimony is belied by the testimonies of the witnesses, none of whom saw any of the robbers holding a gun directed at any of the other robbers.

Jones's duress defense also is discredited by the testimonies of the victims in the strikingly similar Blimpie's armed robbery. The victims identified Jones as an active participant in that robbery. Further, a handgun stolen from one of the victims at the scene of that crime was used in the credit union robbery. Jones manifestly failed to establish duress or coercion.

■ Based on his duress defense, Jones contends that the district court erred in denying his motion for judgment of acquittal made at the close of the government's case-in-chief. Following this denial, Jones presented his case. In our circuit, a defendant's decision to present his case after denial of a motion for judgment of acquittal operates as a waiver of his objection to the denial of his motion for acquittal. *United States v. Thomas,* 987 F.2d 697, 702 (11th Cir.1993); *United States v. White,* 611 F.2d 531, 536 (5th Cir.), *cert. denied,* 446 U.S. 992, 100 S.Ct. 2978, 64 L.Ed.2d 849 (1980). Moreover, if the defendant fails to renew his motion for judgment of acquittal at the end of all of the evidence, then this " 'waiver doctrine' " forecloses the issue of sufficiency of the evidence on appeal absent a showing of a " 'manifest miscarriage of justice.' " *White,* 611 F.2d at 536 (quoting *United States v. Phipps,* 543 F.2d 576, 577 (5th Cir.1976) (per curiam), *cert. denied,* 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 564 (1977)). Since Jones failed to renew his motion for judgment of acquittal at the end of all of the evidence, his conviction must be affirmed unless a manifest miscarriage of justice would result. Considering all of the evidence presented at trial, including Jones's confession and the testimonies of eye witnesses, sufficient evidence was presented to support his conviction on both counts, and to negate his affirmative defense of duress.

## B. *Suppression Motion*

■ Jones claims that his incriminating postarrest statements were coerced and involuntary, and that they should have been suppressed. Specifically, he contends that his admission of participation in the credit union robbery resulted from the interrogating government agent's threatening him with additional criminal charges and jail time as well as the prosecution of his girlfriend. Jones's suppression motion was referred to a magistrate judge, who conducted a hearing on the motion and reviewed the transcript and tape recordings of the interview of Jones by the FBI agent. The magistrate judge recommended that the suppression motion be denied in a thorough report and recommendation. The district court adopted the report and recommendation and denied the motion.

■ Determining the admissibility of a postarrest confession requires a two-part inquiry. *United States v. Sims,* 719 F.2d 375, 378 (11th Cir.1983) (per curiam), *cert. denied,* 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984). We first decide whether the law enforcement officers complied with the requirements of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); if so, we then determine if the confession was voluntary. *Sims,* 719 F.2d at 378. Since Jones does not argue that his *Miranda* rights were violated, we focus on the voluntariness of his confession solely. The determination of whether a confession is voluntary depends on "whether, under all of the surrounding circumstances, the statement was the product of the accused's 'free and rational' choice." *United States v. Vera,* 701 F.2d 1349, 1364 (11th Cir.1983) (quoting *Martinez v. Estelle,* 612 F.2d 173, 177 (5th Cir.1980)); *see Arizona v. Fulminante,* 499 U.S. 279, 285–88, 111 S.Ct. 1246, 1251–53, 113 L.Ed.2d 302 (1991) (voluntariness is determined by a totality of the circumstances). In evaluating the totality of the circumstances, the district court must assess whether law enforcement

conduct was " 'causally related' " to the confession. *United States v. Mendoza–Cecelia,* 963 F.2d 1467, 1475 (11th Cir.) (quoting *Miller v. Dugger,* 838 F.2d 1530, 1536 (11th Cir.), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988)), *cert. denied,* —— U.S. ——, 113 S.Ct. 436, 121 L.Ed.2d 356 (1992).

> Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession. Isolated incidents of police deception, and discussions of realistic penalties for cooperative and non-cooperative defendants, are normally insufficient to preclude free choice.

*Id.* (citations omitted).

In this case, Jones was advised of his *Miranda* rights twice during his transportation to the FBI office, and upon arrival there. Additionally, he signed a waiver of rights form. Jones agreed to speak with the agents about the credit union robbery and did not request an attorney.

Further, the agents did not threaten Jones or make any promises to him in order to entice him to speak with them. To the contrary, they repeatedly informed Jones that they had no ability to affect the charges brought against him. Jones appears to have characterized *information* conveyed to him by the interviewing agent as threats. The FBI agent told Jones that he would be prosecuted in federal court, where a mandatory sentence generally meant that the full incarceration period would be served; that a particular Assistant United States Attorney would prosecute the case; and that he could be charged with carrying a weapon during the commission of a bank robbery, which would add five years to his sentence. Because Jones's girlfriend had contacted the Smyrna Police Department after the robbery in an attempt to take possession of Jones's truck, the agent asked Jones about her involvement. The agent did tell Jones that, unless Jones explained the participation of his girlfriend, she would continue to be considered a suspect. He further told Jones that, if his girlfriend was part of the robbery, then she was subject to prosecution. Jones was never told that his girlfriend would not be prosecuted if he cooperated.

Not only was this information true, but also such comments or information would not render Jones's subsequent statements involuntary. At no time was Jones promised leniency in exchange for his statements. *See Williams v. Johnson,* 845 F.2d 906, 909 (11th Cir.1988) (law enforcement officers' promise that defendant's cooperation would be made known to the appropriate authorities, with no promise of leniency, did not render subsequent confession involuntary). We find no coercion in Jones's interview and confession.

■ Jones also contends that his confession was inadmissible because it was made during plea negotiations. *See* Fed.R.Crim.P. 11(e)(6). Only a law enforcement officer participated in Jones's interview, and at no time was Jones told that the FBI agent had authority to enter into an agreement concerning the charges or sentence. Moreover, the agent did not have the authority to negotiate a plea regarding the robbery charges. The automatic exclusion provision of Rule 11(e)(6) " 'does not extend to statements made to law enforcement agents, as distinguished from government counsel.' " *United States v. Davidson,* 768 F.2d 1266, 1270 (11th Cir. 1985) (quoting *United States v. Ceballos,* 706 F.2d 1198, 1203 (11th Cir.1983)). The questioning of Jones by the FBI agent was an interrogation rather than plea negotiations. Jones's argument that his statements should have been suppressed under Rule 11(e)(6) is meritless.

*C. Sentencing Enhancements*

Jones raises various challenges to his sentencing enhancements imposed by the district court under the Sentencing Guidelines. We review the district court's factual findings at sentencing under the clearly erroneous standard, while its application of law to those facts is subject to *de novo* review. *United*

*States v. Canzater,* 994 F.2d 773, 774 (11th Cir.1993). Whether a particular Guideline applies to a given set of facts is a legal question subject to *de novo* review. *United States v. Dukovich,* 11 F.3d 140, 141 (11th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 114 S.Ct. 2112, 128 L.Ed.2d 671 (1994). We conclude that none of Jones's challenges to his sentencing enhancements are meritorious.

### 1. Display and Possession of a Firearm

■ The district court increased Jones's offense level by five points under section 2B3.1(b)(2)(C) of the Sentencing Guidelines for the possession and display of firearms during the robbery. Because he received a mandatory five-year consecutive sentence for possession of a firearm under 18 U.S.C. § 924(c), Jones contends that an enhancement for possession of a firearm is precluded under section 2K2.4, comment. (n. 2). *See Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1918, 123 L.Ed.2d 598 (1993) (holding that commentary in the Sentencing Guidelines is binding on federal courts). Jones, however, ignores the proviso and exception that follows in section 2K2.4, comment. (n. 2) excepting his argument. Jones's sentence for possession of a firearm is within that proviso because the maximum of his adjusted Guidelines range plus the five-year consecutive sentence is less than the maximum of his unadjusted Guidelines range. Thus, the applicable Guidelines range for the underlying offense absent such adjustment is used after subtracting the term of imprisonment imposed under section 924(c) from the minimum and maximum of this range. U.S.S.G. § 2K2.4, comment. (n. 2) (Nov.1992).

Jones's total offense level, including the five-point gun possession enhancement, was 34. His criminal history was V. The unadjusted Guidelines range for the robbery count was 235 to 293 months. If the five-point enhancement had been subtracted, his offense level would have been 29, yielding an adjusted Guidelines range of 140 to 175 months. Because the maximum of the adjusted Guidelines range plus the five-year consecutive sentence (175 months + 60 months = 235 months) was less than the maximum of Jones's unadjusted Guidelines range (293 months), the applicable range in this case was derived by taking the unadjusted range and subtracting 60 months from each end. Therefore, Jones's applicable range was 175 (235 − 60) to 233 (293 − 60) months.

Consequently, Jones's appropriate term of imprisonment would be a sentence imposed for the underlying offense within the adjusted Guidelines range of 175 to 233 months, combined with the consecutive sixty-month sentence imposed under section 924(c). The district court sentenced Jones to 220 months of imprisonment for the underlying offense, within the adjusted 175 to 233 months Guidelines range. Therefore, Jones's contention that the district court incorrectly applied sections 2B3.1(b)(2)(C) and 2K2.4 is invalid.

### 2. Physical Restraint

■ Jones contends that he erroneously received a two-level enhancement because the evidence at trial did not establish that any person was physically restrained during the commission of the robbery. Under section 2B3.1(b)(4)(B) a two-level enhancement is applicable "if any person was physically restrained to facilitate commission of the offense or to facilitate escape." U.S.S.G. § 2B3.1(b)(4)(B). "Physically restrained" is defined as "the forcible restraint of the victim such as by being tied, bound, or locked up." *Id.* § 1B1.1, comment. (n. 1(i)).

While this court has not addressed the scope of section 2B3.1(b)(4), persuasive decisions from other circuits have held that "[t]he use of the modifier 'such as' in the definition indicates that the illustrations of physical restraint 'are listed by way of example rather than limitation.'" *United States v. Rosario,* 7 F.3d 319, 320–21 (2d Cir.1993) (per curiam) (quoting *United States v. Stokley,* 881 F.2d 114, 116 (4th Cir.1989)); *see United States v. Foppe,* 993 F.2d 1444, 1452 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 615, 126 L.Ed.2d 579 (1993); *United States v. Doubet,* 969 F.2d 341, 346 (7th Cir.1992); *Arcoren v. United States,* 929 F.2d 1235, 1246 (8th Cir.),

*cert. denied,* —— U.S. ——, 112 S.Ct. 312, 116 L.Ed.2d 255 (1991); *United States v. Roberts,* 898 F.2d 1465, 1470 (10th Cir.1990). Both the Seventh and Eighth Circuits have held that a defendant physically restrains his victims if he "creates circumstances allowing the persons no alternative but compliance." *United States v. Kirtley,* 986 F.2d 285, 286 (8th Cir.1993) (per curiam); *see Doubet,* 969 F.2d at 347 (since armed bank robber uttered threats, "[t]he tellers were, for all intents and purposes, confined to the restroom," where "the victims could do nothing about their situation because of the physical restraint").

In this case, the credit union employees and customers were forced at gunpoint into the safe room and ordered to lie face down on the floor. The robbers then closed the door to the room and left. These facts are similar to those in *United States v. Schau,* 1 F.3d 729 (8th Cir.1993) (per curiam). In *Schau,* the bank robbers carrying firearms ordered their victims into the bank vault and attempted to lock the door. When the robbers could not lock the vault door, they wedged a chair against it. The court concluded that the victims were physically restrained for purposes of the section 2B3.1(b)(4)(B) enhancement: "Even though the vault door was not locked and the victims were able to free themselves easily, the victims were forced to comply." *Id.* at 730; *see Kirtley,* 986 F.2d at 286 (armed bank robber physically restrained tellers by ordering them to tie their own feet together although tellers later easily freed themselves); *Doubet,* 969 F.2d at 346–47 (armed bank robber physically restrained tellers by ordering them into an isolated, unlocked restroom and threatening them with death if they looked out the window).

Like the defendants in *Schau,* Jones and his accomplices restricted their victims' mobility and capacity to observe events to facilitate the robbery. Although no threats were made, the obvious presence of handguns ensured the victims' compliance and effectively prevented them from leaving the room for a brief period while the robbers fled the scene.

The district court properly concluded that the victims in this case were physically restrained facilitating the commission of the robbery within the meaning of the section 2B3.1(b)(4)(B) enhancement.

### 3. Firearm Taken

Jones contends that the district court erred in enhancing his offense level by one level under section 2B3.1(b)(5) for taking a firearm during the prior Blimpie's robbery. At sentencing, however, the district court sustained Jones's objection and refused to enhance his offense level under section 2B3.1(b)(5) and his offense level accordingly was corrected. Therefore, this challenge to Jones's sentence is specious.

### 4. Obstruction of Justice

 Jones contests the district court's two-level enhancement for obstruction of justice because he claims that he was penalized for exercising his constitutional right to a jury trial. Under section 3C1.1, a two-level enhancement is warranted if the district court finds that "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. Examples of conduct to which the obstruction enhancement applies include committing perjury and providing materially false information to a judge. *Id.* § 3C1.1, comment. (n. 3(b) & (f)); *see United States v. Fu Chin Chung,* 931 F.2d 43, 45 (11th Cir. 1991) (per curiam). To avoid penalizing a defendant for asserting his constitutional right to testify by according the enhancement whenever a defendant testifies on his behalf and is found guilty, the district court must make an independent factual finding that the defendant willfully gave perjured testimony to support a finding of obstruction of justice under section 3C1.1. *United States v. Dunnigan,* —— U.S. ——, ——, 113 S.Ct. 1111, 1117–18, 122 L.Ed.2d 445 (1993). A finding that a defendant testified untruthfully at trial is reviewed for clear error. *Fu Chin*

*Chung,* 931 F.2d at 45; *see United States v. Cain,* 881 F.2d 980, 982 (11th Cir.1989) (finding that defendant obstructed justice under section 3C1.1 is a factual determination that will not be overturned on appeal unless clearly erroneous).

The district court specifically found that Jones obstructed justice by testifying that he committed the bank robbery only because he was threatened at gunpoint by his coconspirators, R4 [1]–37–38, that the Blimpie's robbery was an "insurance scam," *id.* at 38, and by providing inconsistent testimony at his and his coconspirators' trials, *id.* The district court concluded that Jones's obstruction of justice was "absolutely clear in this case." *Id.* at 37. Because the district court made an independent factual finding that Jones repeatedly committed perjury during his trial and the trials of his coconspirators, *id.* at 38, 89, 96, the obstruction enhancement was appropriate. *See United States v. Lawrence,* 972 F.2d 1580, 1581 (11th Cir.1992) (per curiam), *cert. denied,* —— U.S. ——, 113 S.Ct. 1015, 122 L.Ed.2d 162 (1993); *United States v. Husky,* 924 F.2d 223, 224 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 111, 116 L.Ed.2d 81 (1991). Thus, Jones's specific contention concerning this enhancement is meritless because the district court imposed the obstruction enhancement not because Jones went to trial, but because he gave false testimony under oath.

### 5. Reckless Endangerment

■ Jones challenges the district court's two-level enhancement for reckless endangerment during flight because he contends that Arnold and White forced him to flee. Under section 3C1.2, a defendant's sentence may be enhanced by two levels "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2; *see United States v. Burton,* 933

F.2d 916, 918 (11th Cir.1991) (per curiam). At sentencing, the district court concluded that Jones was responsible for his accomplices' reckless behavior under the Guidelines relevant conduct provision. This provision requires that a defendant's offense level incorporate "all reasonably foreseeable acts and omissions *of others* in furtherance of the jointly undertaken criminal activity," whether or not a conspiracy is charged. U.S.S.G. § 1B1.3(a)(1)(B) (emphasis added); *see* comment. (n. 2(b)) (getaway driver in armed bank robbery is accountable for accomplice's assaultive conduct in furtherance of the jointly undertaken criminal activity).

After the robbery in this case, Jones drove the getaway vehicle and engaged a Smyrna Police officer in a high-speed chase on Interstate 285. When the officer reached Jones's truck, Jones swerved around other cars, and Arnold drew a weapon and aimed it at the officer. After the officer slowed his vehicle, Jones made an abrupt right turn, drove off the interstate and struck a tree. While Arnold continued to hold a firearm on the officer, Jones and White ran into the woods. Under the circumstances, Jones reasonably could have foreseen that a weapon might be brandished to facilitate their escape. *See United States v. James,* 998 F.2d 74, 83 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 415, 126 L.Ed.2d 362 (1993). Because Jones's high speed driving of the getaway vehicle and Arnold's aiming a firearm at the pursuing officer created a substantial risk of death or serious bodily injury to the police officer and others on the highway, the district court correctly concluded that Jones's conduct justified a two-level enhancement under section 3C1.2.

### III. CONCLUSION

Jones has challenged his conviction for aiding and abetting an armed bank robbery for

---

1. Volume 4 of the record on appeal refers to the fourth volume of the appellate record for former codefendant Kenneth White, *United States v. White,* No. 93–8446 (11th Cir. Sept. 16, 1994). This volume is the transcript for the consolidated sentencing of Jones, White and Arnold, and it is shared by all on appeal.

denial of his motion for judgment of acquittal based on a duress defense, denial of his motion to suppress statements, and various sentencing enhancements. Our review of the record establishes that sufficient evidence to overcome his duress defense supports his conviction, that the district court did not err in denying his suppression motion, and that the court properly applied the Sentencing Guidelines in enhancing Jones's sentence. We AFFIRM.