[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-14381
Non-Argument Calendar

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 28, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00033-CR-RV

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES LEE RUSH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(July 28, 2005)**

Before BLACK, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

James Lee Rush was convicted of one count of possession of a firearm by a

convicted felon, in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a firearm while subject to a court-issued restraining order, in violation of 18 U.S.C. § 922(g)(8). The district court sentenced him to forty-two months imprisonment. Rush appeals both his conviction and his sentence.

## I.

Rush challenges his conviction on the ground that the district court erred by admitting incriminating statements he had made to Craig Roegner, a Special Agent for the Bureau of Alcohol, Tobacco, Firearms, and Explosives. Rush argues that the statements were obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966), because the waiver he gave was not made voluntarily, knowingly, and intelligently. He further argues that the statements themselves were not made voluntarily. He also asserts that his Sixth Amendment rights were violated because he did not freely and voluntarily consent to being questioned without an attorney.

The district court found that Rush's statements to Agent Roegner were made knowingly and voluntarily, and that the statements were made in compliance with all the requirements of the law. As a result, the district court permitted Roegner to testify about those statements.

"A district court's ruling on a motion to suppress presents mixed questions

of law and fact." United States v. Ramirez-Chilel, 289 F.3d 744, 748–49 (11th Cir. 2002). This Court must "accept the district court's factual findings as true unless they are clearly erroneous, but the district court's application of the law to the facts is reviewed de novo." Id. at 749 (quotation omitted).

Under Miranda, before beginning a custodial interrogation, law enforcement officers must warn the subject that he has the right to remain silent and the right to have an attorney present during questioning. 384 U.S. at 444, 86 S. Ct. at 1612. An individual can effectively waive his Miranda rights if the waiver is given "voluntarily, knowingly and intelligently." Id. "[I]f the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension, . . . a court [may] properly conclude that the Miranda rights have been waived." Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141 (1986).[1]

Once the Miranda waiver determination has been made, we must determine whether the statement itself was made voluntarily. See United States v. Jones, 32 F.3d 1512, 1516 (11th Cir. 1994). "The determination of whether a [statement] is

---

[1] In this case, Rush's waiver of counsel was in regard only to Agent Roegner's questioning. Furthermore, Rush does not assert that he requested counsel at any point during questioning. As a result, whether Rush's Sixth Amendment right to counsel was violated depends on whether his Miranda waiver was validly obtained. See Patterson v. Illinois, 487 U.S. 285, 293, 108 S. Ct. 2389, 2395 (1988).

3

voluntary depends on whether, under all of the surrounding circumstances, the statement was the product of the accused's 'free and rational' choice." Id. Conduct sufficient to render a statement involuntary "normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." Id. at 1517 (quoting United States v. Mendoza-Cecelia, 963 F.2d 1467, 1475 (11th Cir. 1988)).

The circumstances surrounding Rush's statements to Agent Roegner are as follows. Rush was taken into custody after police officers found that he was illegally in possession of a gun. According to Roegner's testimony, once he arrived at the police station to interview Rush, Rush began complaining of chest pains. Rush was then immediately taken to a hospital. Roegner accompanied him to the hospital. Rush was treated in a private room in the hospital's emergency room, where he was handcuffed to the hospital bed.

After Rush was in the hospital for approximately two hours, Agent Roegner was cleared by the doctor to speak to him. Roegner spoke with the doctor and made sure that Rush was not under any kind of narcotic or pain medication. Roegner specifically asked the doctor whether Rush was given any kind of medication that might affect his ability to think or reason. According to Roegner,

4

the doctor responded that the only thing Rush had been administered was an IV drip (the record does not reflect what was in the drip). Roegner also asked the doctor if Rush was suffering from a heart attack or some other similar condition, to which the doctor responded that Rush was not. Roegner further testified that Rush did not appear impaired by any drugs, nor was he complaining of chest pains as he had been earlier at the police station.

At that point, Agent Roegner read Rush his <u>Miranda</u> rights from the Pensacola Police Department's standard waiver of rights form. Rush, a high school graduate who had been involved in at least thirteen previous offenses, then signed the waiver. With the waiver in hand, Roegner began questioning Rush. The initial questioning went on for approximately fifteen minutes, at which time they took a short break. The questioning then continued for another fifteen to twenty minutes. The entire session lasted for approximately forty to forty-five minutes. Though various medical tests were being performed on Rush while he was being questioned, Roegner testified that Rush did not appear to be experiencing any pain or discomfort during the interview.

At no point did Rush ask Agent Roegner to stop questioning him. In fact, according to Roegner, Rush said that he wanted to speak to Roegner. Furthermore, Rush never asked to have an attorney present.

5

Given this testimony, the district court did not err in finding that Rush voluntarily, knowingly, and intelligently waived his <u>Miranda</u> rights. Nor did the district court err in finding that Rush's statement to Agent Roegner was given voluntarily. See <u>Jones</u>, 32 F.3d at 1517.

**II.**

Rush challenges his sentence on the grounds that it was imposed in violation of <u>United States v. Booker</u>, 543 U.S. ___, 125 S. Ct. 738 (2005), because his sentence was increased under a mandatory guidelines system based on facts that were neither found by a jury nor admitted by him.

Because Rush raised this argument before the district court, albeit in the form of a challenge based on <u>Blakely v. Washington</u>, 542 U.S. ___, 124 S. Ct. 2531 (2004), our review is <u>de novo</u>. See <u>United States v. Robles</u>, 408 F.3d 1324, 2005 WL 1083487, *3 (11th Cir. May 10, 2005). Neither party disputes that the district court committed a <u>Booker</u> constitutional error in sentencing Rush. As a result, we will reverse the district court unless the government carries its burden of demonstrating that the error was harmless. <u>United States v. Paz</u>, 405 F.3d 946, 948 (11th Cir. 2005).

"To find harmless error, we must determine that the error did not affect the substantial rights of the parties. A constitutional error, such as a <u>Booker</u> error,

6

must be disregarded as not affecting substantial rights if the error is harmless beyond a reasonable doubt. This standard is only met where it is clear beyond a reasonable doubt that the error complained of did not contribute to the sentence obtained." Id. (quotations, marks, and citations omitted).

Before announcing Rush's sentence, the district court noted that the guidelines range that Rush received for this offense, thirty-seven to forty-six months, "is a relatively low guideline" range "for this serious offense." The court also recognized the uncertainty brought about by the Supreme Court's decision in Blakely and commented on the flexibility of the guidelines, even as they were written at that time.

Just after pronouncing Rush's forty-two month sentence, the district court made the following statement:

> This sentence is near the mid point of the guideline range and takes into account all of the various factors that are identified in the policy statements, as well as the guidelines themselves, and what I think reflects an appropriate punishment under the total circumstances.
>
> I find that the sentence meets the sentencing goals of punishment, as well as specific and general deterrence, all of which are sentencing goals.
>
> And in making my decision, I have considered all the factors set out by statute in Section 3553(a) of Title 18, United States Code, as well as the policy statements and guidelines from the Sentencing Commission.

Although the district court did give some indication that Rush's sentence was appropriate, we cannot say that it is "clear beyond a reasonable doubt" that the district court would not have given Rush a lesser sentence had it been operating under an advisory guidelines scheme.  Merely expressing approval of sentence produced by a mandatory guidelines system does not settle beyond a reasonable doubt whether a district court would have given a defendant a lesser sentence under an advisory regime.  Cf. Robles, 403 F.3d at ___, 2005 WL 1083487, at *3 (finding a Booker constitutional error harmless beyond a reasonable doubt where the district court judge expressly stated that it would impose the same sentence had the guidelines been advisory rather than mandatory).  As a result, the government has not met its difficult burden of demonstrating that the Booker constitutional error was harmless beyond a reasonable doubt.

## III.

Based on the foregoing, Rush's conviction is AFFIRMED.  His sentence is VACATED and the case is REMANDED for resentencing.