[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 30, 2008
THOMAS K. KAHN
CLERK

----------------------------------------

No. 07-14237
Non-Argument Calendar

----------------------------------------

D.C. Docket  No. 06-00052-CR-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MABEL MEJIA-CHICAS,
a.k.a. Mabel Mejia,
a.k.a. Mabel Chicas-Mejia,
a.k.a. Dina Moran,
a.k.a. Diana Rodriquez-Palacios,
a.k.a. Anna Bell-Rodriquez,
a.k.a. Diana Rodriquez,
a.k.a. Diana Campos,

Defendant-Appellant.

---------------------------------
Appeal from the United States District Court
for the Northern District of Georgia
---------------------------------
**(July 30, 2008)**

Before EDMONDSON, Chief Judge, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Defendant-Appellant Mabel Mejia-Chicas appeals the denial of a motion to suppress in her conviction for illegal re-entry into the United States after deportation, 8 U.S.C. § 1326(a), (b)(2). No reversible error has been shown; we affirm.

Mejia-Chicas argues that the district court erred in denying the suppression motion because the initial traffic stop and the officers' continued detention of her, including the seizure of her cash, violated the Fourth Amendment. She contends that her later statements to agents should be suppressed as fruits of the illegal search and seizure. In considering the district court's denial of a motion to suppress, we review fact determinations for clear error and application of law to the facts de novo. United States v. Boyce, 351 F.3d 1102, 1105 (11th Cir. 2003).[1]

We conclude that probable cause supported the initial traffic stop; Georgia State Patrol Officer Greg Shackleford testified that he clocked Mejia-Chicas driving a van on the interstate at 15 miles over the speed limit. Whren v. United States, 116 S.Ct. 1769, 1772 (1996) (the decision to stop a car is reasonable where police have probable cause to believe that a traffic violation has occurred). That Shackleford intended to stop the van at the request of Immigration and Customs

---

[1]In addition, we construe all facts in the light most favorable to the prevailing party. Id.

Enforcement ("ICE") is true. ICE agents had observed Mejia-Chicas in an Atlanta area under investigation as an illegal alien trafficking transfer point and asked for Shackleford's help in stopping the van because it was suspected of carrying illegal aliens or the cash proceeds of alien trafficking.[2] But this fact is irrelevant to the reasonableness of the traffic stop. See id. at 1774 (explaining that the constitutional reasonableness of a traffic stop does not depend on the actual motivations of the officers involved).

We also conclude that the continued detention of Mejia-Chicas did not violate the Fourth Amendment. An officer may extend the duration of a traffic stop to investigate suspicious circumstances that come to his attention if the officer's suspicion is reasonable and the extended seizure is brief. United States v. Harris, 928 F.2d 1113, 1117 (11th Cir. 1991). Reasonable suspicion existed here based on the following things: (1) before stopping the van, Shackleford had received information from ICE agents that the occupants of the van were suspected of carrying illegal aliens or cash proceeds from such trafficking; (2) upon stopping the van, neither Mejia-Chicas nor her Hispanic male passenger could produce proof of ownership of the van or insurance; (3) based on the

---

[2]Upon observing the van -- which had California plates and dark tinted windows -- ICE agents ran several record checks on the tag number. One check indicated that the van had been stopped on many occasions in the United States for transporting illegal aliens.

passenger's responses to questions about their itinerary, Shackleford noted that Georgia seemed an illogical state in which to be traveling; and (4) while standing outside the van and looking in it, Shackleford detected a urine-like odor and observed food wrappers and clothing strewn about the van, which led him to believe that the van had been traveling for a long time or that somebody lived in it. The information that ICE agents gave Shackleford about illegal alien trafficking coupled with his own observations of the van provided the requisite reasonable suspicion to continue the stop. See United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990) (explaining that reasonable suspicion is based on the totality of the circumstances and in the light of the officers' collective knowledge).

After making these initial observations, Shackleford obtained consent to search the van from Mejia-Chicas and the passenger.[3] During this search, Shackleford and other back-up officers discovered large amounts of cash in the van and on Mejia-Chicas's person. By radio, ICE agents instructed officers to seize the cash and, because the male passenger had provided no valid identification, told officers to take him into custody. The agents said that Mejia-Chicas could leave, but that if she wished to grieve about the seized money, she

---

[3]Mejia-Chicas argues that her consent was invalid because the initial stop and continued detention were illegal; but we conclude that both the stop and detention complied with constitutional mandates. Mejia-Chicas does not otherwise challenge the voluntariness of her consent.

could follow the officers back to the police station. Officers returned Mejia-Chicas's license to her and conveyed the agents' message about the money. Mejia-Chicas challenges the money seizure because it amounted to a continued detention.

To the contrary, officers told Mejia-Chicas she was free to leave. Her initial acts upon being told she could leave belie her argument that she reasonably believed she had to follow the officers to the station. She initially indicated to Shackleford that she did not want to follow him to the station and did not follow him when he left. That she later, on her own, flagged down another officer who had left the traffic stop before Shackleford and followed him to the station does not change that she was free to leave.[4] We conclude that no seizure occurred. United States v. Perez, 443 F.3d 772, 777-78 (11th Cir. 2006) (a person is not seized for Fourth Amendment purposes if a reasonable person would feel free to terminate the encounter with the police) (citation omitted).

---

[4] In the context of air travel, we have concluded that seizure of a person's luggage could constitute a seizure of the luggage's owner if it interfered with her travel plans. See United States v. Puglisi, 723 F.2d 779, 790 (11th Cir. 1984). But we also concluded that the seizure of the property must have been unlawful for the corresponding seizure of the traveler to have been unlawful. See id. at 790-91. Here, Mejia-Chicas does not argue that the seizure of the money was without legal basis and, therefore, abandons any such argument. See United States v. Jernigan, 341 F.3d 1273, 1284 n.8 (11th Cir. 2003) (noting that a claim that is not plainly and prominently indicated is abandoned on appeal, even if properly preserved elow). Thus, Mejia-Chicas provides us with no basis to reverse the district court.

5

When Mejia-Chicas arrived at the police station, she asked to speak with ICE agents. Agents asked her if she was in the United States legally, and she replied that she was not. Agents then read Mejia-Chicas her Miranda[5] rights, with translation by the male passenger; and she also read her rights in Spanish. She waived her rights and eventually admitted to transporting illegal aliens. Agents placed her under arrest and took her to the downtown Atlanta office for more questioning. Here, agents fingerprinted Mejia-Chicas and discovered that she had previously been convicted of cocaine possession and distribution and deported. Two days later, an ICE agent, after re-giving Mejia-Chicas Miranda warnings, took her sworn statement. Mejia-Chicas argues for the suppression of all these statements. But the only argument she puts forth in support of this contention is that the initial stop and detention were illegal. We already have concluded that the traffic stop and continued detention were not unlawful; and thus, the statements were not the result of an unlawful search, seizure or arrest.[6]

---

[5]Miranda v. Arizona, 86 S.Ct. 1602 (1966).

[6]We also note that no Miranda violation occurred. When Mejia-Chias initially spoke to ICE agents, she was not in a custodial setting. See United States v. Muegge, 225 F.3d 1267, 1270 (11th Cir. 2000) (Miranda warnings are required only after a person is taken into custody). And her other statements were obtained only after she was given Miranda warnings and she voluntarily waived her rights. See United States v. Jones, 32 F.3d 1512, 1516 (11th Cir. 1994).

Accordingly, the district court did not err in denying Mejia-Chicas's motion to suppress as each stage of her contact with officers passed constitutional muster.[7]

AFFIRMED.

---

[7]Mejia-Chicas also argues that the district court erred in concluding that the exclusionary rule did not apply in a section 1326 prosecution. But because we conclude that no Fourth Amendment violation occurred and affirm the district court on that basis, it is unnecessary for us to address the district court's alternative determination.