[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15767
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-20524-KMM-1


UNITED STATES OF AMERICA,

                                                          Plaintiff-Appellee,

versus

ALEX CHRISTOPHER WESTBROOK,

                                                          Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 24, 2014)

Before WILLIAM PRYOR, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Alex Christopher Westbrook appeals his 114-month sentence following his guilty plea to conspiracy to commit a Hobbs Act robbery and brandishing a firearm in furtherance of a crime of violence.  We affirm.

## I. BACKGROUND

On July 3, 2013, Westbrook and his codefendants drove to a McDonald's in Miami, Florida, to commit armed robbery.  Westbrook and one co-defendant, Leon Escourse-Westbrook ("Escourse"), entered the restaurant, while the other codefendant waited in, and later drove, the "get-away car."  R. at 202-03.  During the robbery, Westbrook brandished a gun and ordered everyone to the floor. Westbrook pointed the gun at several customers, from whom Westbrook took several electronic items.

On July 19, 2013, a federal grand jury indicted Westbrook and two codefendants for conspiracy to commit a Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count 1); Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count 2); and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count 3).  In September 2013, Westbrook pled guilty to Counts 1 and 3 with a plea agreement in which the government agreed to seek the dismissal of Count 2 at sentencing.  During Westbrook's plea proceeding, the government proffered the facts, and Westbrook testified the government's proffer was true.

2

Westbrook's presentence investigation report ("PSI"), which applied the 2012 Sentencing Guidelines Manual, provided a description of the offense conduct that was materially identical to the government's proffer. The PSI further reported one of the victims told police one robber approached him with a gun and told him to get on the floor, which he did. The robbers then ordered two other patrons to get on the ground and to give them everything they had. An iPhone and a laptop were taken from them. Surveillance video showed the shorter of the two robbers had used the gun. Westbrook is several inches shorter than Escourse.

The PSI assigned Westbrook a base offense level of 20, under U.S.S.G. § 2B3.1(a). The probation officer added 2 levels, because a person was physically restrained to facilitate the commission of the offense or escape, under § 2B3.1(b)(4)(B). The PSI accorded a 3-level acceptance-of-responsibility reduction, under U.S.S.G. § 3E1.1, which yielded an offense level of 19. The probation officer assigned Westbrook a criminal history category of I, which resulted in a Sentencing Guidelines range of 30-37 months of imprisonment for Count 1. Westbrook was subject to a statutory maximum prison term of 20 years on Count 1, and a consecutive term of 7 years to life on Count 3. *See* 18 U.S.C. §§ 924(c)(1)(A)(ii), (D)(ii), 1951(a).

The district judge conducted a joint sentencing hearing for Westbrook and his codefendants. Westbrook and Escourse objected to the imposition of a

physical-restraint enhancement.  The judge determined the enhancement was appropriate under *United States v. Victor*, 719 F.3d 1288 (11th Cir. 2013).  Westbrook's counsel stated: "Also, the fact that he is getting 84 months for the firearm, it just seems like a double hit for doing the same action of having a firearm.  But as I've set forth, I don't think that should apply.  But your Honor has ruled on that."  R. at 275-76.

The district judge calculated an offense level of 19, a criminal history category of I, and a resulting Guidelines range of 30-37 months of imprisonment as to Count 1, to be followed by an 84-month sentence as to Count 3.  Consequently, the judge imposed a 30-month sentence on Count 1 and a consecutive 84-month sentence on Count 3, to be followed by 5 years of supervised release.  The judge stated he had "considered the statements of all parties, the presentence report, which contains the advisory Guidelines, and the statutory factors as set forth in Title 18, United States Code, Section 3553."  R. at 277.  When asked for objections, Westbrook renewed his physical-restraint-enhancement objection.  The judge dismissed Count 2 on the government's motion.

Westbrook argues on appeal that the district judge erred in imposing the two-level § 2B3.1(b)(4)(B) enhancement.  He contends he used the gun not to move or restrain the victims, but to ensure compliance with his "request," and he did not "pistol whip" anyone.  Appellant's Br. at 12.  He argues applying

4

§ 2B3.1(b)(4)(B) in his case would subject every armed robber to the enhancement unless no victims were present during the robbery.  Westbrook appears to argue for the first time on appeal that, because he was subject to an increased mandatory minimum sentence for brandishing a gun, the two-level enhancement resulted in impermissible double-counting based on the same conduct.

## II. DISCUSSION

We review the district judge's application of the Sentencing Guidelines de novo and his factual findings for clear error.  *Victor*, 719 F.3d at 1290.  We also review de novo a double-counting claim.  *United States v. Webb*, 665 F.3d 1380, 1382 (11th Cir. 2012) (per curiam).  Assignments of error not raised before the district judge, however, are reviewed on appeal for plain error.  *United States v. Rodriguez*, 627 F.3d 1372, 1380 (11th Cir. 2010).  Establishing plain error requires showing (1) an error (2) that was plain, (3) affected one's substantial rights, and (4) seriously affected the fairness of the judicial proceedings.  *Id.*  Under § 2B3.1(b)(4)(B), a two-level sentencing enhancement applies "if any person was physically restrained to facilitate commission of the offense or to facilitate escape." U.S.S.G. § 2B3.1(b)(4)(B).  The § 2B3.1 commentary explains the enhancement applies in "robberies where a victim was forced to accompany the defendant to another location, or was physically restrained by being tied, bound, or locked up." *Id.* § 2B3.1 cmt. background.  The Guidelines define "physically restrained" as

5

"the forcible restraint of the victim such as by being tied, bound, or locked up." *Id.* § 1B1.1 cmt. n.1(K).

The physical-restraint enhancement is not limited to these examples, but also applies when a defendant's conduct "ensured the victims' compliance and effectively prevented them from leaving a location." *Victor*, 719 F.3d at 1290. In *Victor*, the defendant entered a credit union with his hand in his jacket as if concealing a gun and directed a lobby employee to the teller line. *Id.* at 1289. We concluded that "by threatening the lobby employee with what the employee believed to be a gun to prevent her from escaping, [the defendant] physically restrained her" under § 2B3.1(b)(4)(B). *Id.* at 1290. Although the defendant argued on appeal that he had not moved the employee "for a significant distance," we highlighted that § 2B3.1(b)(4)(B) did not require the victim to be moved at all. *Id.*; *see also United States v. Jones*, 32 F.3d 1512, 1519 (11th Cir. 1994) (per curiam) (concluding a § 2B3.1(b)(4)(B) enhancement applied to a bank robbery where, "[a]lthough no threats were made, the obvious presence of handguns ensured the victims' compliance and effectively prevented them from leaving the room for a brief period while the robbers fled the scene").

"Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the

6

Guidelines." *Webb*, 665 F.3d at 1382 (citation and internal quotation marks omitted). Double counting a factor during sentencing is permitted if the Sentencing Commission intended that result and each Guidelines section in question concerns conceptually separate notions relating to sentencing. *Id.*

Westbrook has not shown the district judge erred in imposing the § 2B3.1(b)(4)(B) enhancement. Contrary to Westbrook's suggestion, the enhancement did not require the movement of victims, much less "pistol whip[ping]." *See Victor*, 719 F.3d at 1290; Appellant Br. at 12. He moved several victims by ordering them to the floor at gunpoint and thereby "effectively prevented them from leaving" the restaurant. *See Victor*, 719 F.3d at 1290.

Westbrook's double-counting claim also is meritless, regardless of the standard of review. Westbrook's challenge to § 2B3.1(b)(4)(B) involves the application of a Guidelines provision and a statutory minimum sentence, and not two Guidelines provisions. *See Webb*, 665 F.3d at 1382. In any event, the physical-restraint enhancement and the § 924(c)(1)(A)(ii) mandatory-minimum sentence implicated separate acts. *See id.* The § 924(c)(1)(A)(ii) sentence was based on Westbrook's brandishing of a gun and would have applied regardless of whether any physical restraint was involved. *See* 18 U.S.C. § 924(c)(1)(A)(ii). The § 2B3.1(b)(4)(B) enhancement, however, was based on Westbrook's additional act of ordering several victims to lie on the floor at gunpoint, which

7

"ensured the victims' compliance and effectively prevented them from leaving."

*Victor*, 719 F.3d at 1290.

**AFFIRMED.**